198 S.E.2d 626 (1973)
214 Va. 240
William A. PERKINS, Jr., et al.,
v.
COUNTY OF ALBEMARLE.
Supreme Court of Virginia.
August 30, 1973.
Rehearing Granted October 8, 1973.
William A. Perkins, Jr., David J. Wood, Jr., J. Harry Michael, Jr., Charlottesville (E. Gerald Tremblay, Paul Peatross, McGuire, Woods & Battle, Wood, Wood & Wood, Michael & Dent, Tremblay & Smith, Charlottesville, on brief), for appellants.
Harry Frazier, III, Richmond (John Wood, Michaels & Dent, Tremblay & B. Ashton, Hunton, Williams, Gay & Gibson, Richmond, on brief), for appellee.
Before SNEAD, C. J. and I'ANSON, CARRICO, HARRISON, COCHRAN, HARMAN and POFF, JJ.
POFF, Justice.
William A. Perkins, Jr., Ann P. Perkins and Polly P. McGavock (plaintiffs), owners of real estate in Ivy Magisterial District of Albemarle County, filed a bill for declaratory judgment against the County of Albemarle (defendant) alleging that the real estate tax assessment procedures employed *627 by defendant violated the Constitution and statutes of Virginia and the Constitution of the United States and moving the court to declare defendant's reassessments of plaintiffs' properties null and void. Plaintiffs were joined by 86 intervenors, taxpayers similarly situated. By decree entered July 5, 1972 the chancellor found for the defendant and dismissed the bill.
In 1966 and early 1967 all real estate in Albemarle County was reappraised at fair market value by professional appraisers and a general reassessment at a 15 percent ratio was imposed effective January 1, 1967. At its April 20, 1967 meeting the county's board of supervisors discussed the possibility of adopting in lieu of the six-year general assessment system the new annual assessment system authorized the preceding year by the General Assembly. The matter was tabled to the May 18, 1967 meeting at which the minutes reflect that a "motion was offered . . . authorizing necessary action to implement an annual real estate assessment . . . ." That motion was seconded and adopted by a recorded vote of 5 to 1.
After consultation with officials in other localities which had adopted the annual assessment system, the director of finance (county executive) undertook a program designed to reappraise and reassess over a period of years the more than 15,000 tax parcels in the county. Understaffed and underequipped with the tools of the craft, he initiated the program in Charlottesville Magisterial District adjacent to the City of Charlottesville where real estate value increases had been greatest. By 1969, with the help of one additional appraiser employed in 1968, defendant had reappraised 2,913 parcels which resulted in a tax assessment increase effective January 1, 1969 of $4,774,610. By the end of 1970, 1,891 additional parcels, including the remainder of those in Charlottesville Magisterial District and all but 33 in Ivy Magisterial District, had been reappraised, resulting in a tax assessment increase effective January 1, 1970 of $4,234,500.[1] By the end of 1971, with the aid of one new worker employed in 1970 to assist in appraising new construction, 3,342 additional parcels, including the remainder of those in Ivy Magisterial District and all those in Rivanna Magisterial District, had been reappraised, resulting in a tax assessment increase effective January 1, 1972 of $5,498,277.
In summary, these three reappraisals of 8,145 of the 15,000 tax parcels in the county resulted in a tax assessment increase of $14,507,386, raising the total assessed value of county property from $33,407,140 in 1967 to $47,914,527 in 1972.[2] During that period the remainder of the 15,000 parcels were assessed annually using the same appraisals used in the January 1, 1967 general assessment. Defendant expects to complete reappraisal and reassessment of all land in the county by the end of 1973.
Authority for counties and cities to change from the general assessment system to an annual assessment system is couched in the language of Code § 58-769.2 which reads in pertinent part as follows:
"The governing body of any county or city may, by resolution duly adopted, in lieu of the method now prescribed by law, provide for the annual assessment and equalization of real estate for local taxation . . . . All real estate shall thereafter be assessed as of January first of each year and taxes for each year. . . shall be extended . . . on the basis of the last assessment made prior to such year."
Plaintiffs contend that defendant did not adopt an annual assessment system because it failed to follow the adoption procedures required by the statute. First, they say *628 that a "motion" is not a "resolution" and that even if so, the motion adopted here was not a consummation of adoption of an annual assessment system but only a preliminary decision "authorizing necessary action to implement" such a system later.
We will not linger long over a distinction without a difference. The distinction between a "motion" and a "resolution" is simply stylistic; there is no substantive difference. Gordon v. Fairfax County, 207 Va. 827, 153 S.E.2d 270 (1967). We look to substance. The substance of the motion authorized whatever action might be necessary to carry into effect an annual assessment system, a parturient process which obviously could not be accomplished instanter. Its adoption was a legislative act by a local governing body, and no matter how labeled by the layman who prepared the minutes recording it, fully satisfied the requirement of Code § 58-769.2.
Second, plaintiffs argue that defendant did not adopt an annual assessment system because it failed to establish a department of assessments. They rely upon Code § 15.1-604. Their reliance is misplaced. That statute, enacted in 1950, gives a county operating under the county executive form of government the option of establishing such a department. If it does so, Code § 15.1-612 authorizes it to adopt annual assessment procedures. That is one method prescribed by law. Code § 58-769.2, enacted in 1966, authorizes "any county or city" to pursue another method "in lieu of the method now prescribed by law". Defendant pursued the new method under which establishment of a department of assessments is not required.
Accordingly, we agree with defendant that the county properly followed the statutory adoption procedures and lawfully adopted the annual assessment system.
However, we agree with plaintiffs that the piecemeal, segmental assessment methodology defendant has employed in implementing the system violates the mandate of Virginia Constitution (1902) § 168[3] that "all taxes . . . shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax . . . ."
Code § 58-769.2 conforms to the constitutional mandate. It requires that once the new system is adopted "[a]ll real estate shall . . . be assessed as of January first of each year . . ." Here, that requirement was ignored; assessments were made from year to year in installments. Part of the county's real estate was assessed effective January 1, 1969, part effective January 1, 1970, and part effective January 1, 1972. The remainder of the real estate "within the territorial limits of the authority levying the tax", nearly half the total tax parcels, is yet to be assessed.
The impact of this process of assessment by the geographical installment plan can be illustrated in terms of tax payments made in 1971. In Charlottesville Magisterial District, taxes were paid on assessments based on appraisals based on market values in 1968 and 1969; in Ivy Magisterial District, taxes were paid on assessments based on appraisals based on values in 1969 and 1970; in all other districts, taxes were paid on assessments based on appraisals based on values prior to the January 1, 1967 general assessment. In the course of that time, real estate values rose dramatically, not only in Charlottesville and Ivy Magisterial Districts where appreciation was greatest, but in all areas of the county. After the new assessments, taxpayers in the two districts affected by the new levies paid approximately twice what they had paid previously while taxpayers elsewhere paid the same as before. Moreover, disparity existed not only between these two districts and the remainder of the county but between these two districts themselves; the values on which tax liability was computed in Charlottesville Magisterial District *629 were one year older than those used to compute tax liability in Ivy Magisterial District, and in the course of that year, values in both increased 15 percent to 20 percent.
Defendant acknowledges such disparity but insists that it constitutes only a "technical lack of uniformity" which is constitutionally "tolerable" as unavoidable "startup pains" in the transition from the old to the new system. For how many years it could remain constitutionally untainted defendant does not say. While absolute and constant uniformity may be an unattainable ideal, we do not agree that the lack of uniformity which exists here is merely technical or constitutionally tolerable, because we do not agree that it was unavoidable.
Neither the Constitution nor the statute requires that before the new system becomes operative appraisals must be completed county-wide within a 12-month frame. What is required is uniformity in assessments upon which tax liability is uniformly levied. The "start-up pains" experienced here could have been avoided had defendant taken whatever period of years proved necessary to complete county-wide appraisals, postponed assessments county-wide until the appraisals first made had been arithmetically adjusted by the intervening growth factor to comport with the appraisals last made, and then levied tax liability on assessments based on appraisals up-dated county-wide. Such a process would have delayed receipt of the additional revenue defendant sought, but such was the price of constitutional uniformity. And if the price was too dear, and if defendant was unable or unwilling to hire the additional appraisers necessary to minimize the delay, defendant could have acquired additional revenue during the period of delay by increasing tax rates county-wide, a politically sensitive but fiscally viable alternative.
Except for reassessments based upon reappraisals related to subdivision and improvement, the reassessments (as distinguished from reappraisals) of the properties of plaintiffs and those similarly situated were unconstitutional. To the extent such unconstitutional reassessments exceeded assessments effective January 1, 1967, taxes levied thereon were unlawful. Such taxes collected must be refunded. Such taxes yet uncollected must be abated. The judgment will be reversed and the case remanded for further proceedings not inconsistent with this opinion.
Reversed and remanded.
NOTES
[1] In December 1970, the board of supervisors abated all taxes levied on these two reassessments and advanced the effective date of each by one year.
[2] In the same period, reappraisals related to subdivision of and improvements made upon these 8,145 parcels accounted for an additional $8,650,240 assessment increase.
[3] Constitution of Virginia [1971], Article X, § 1.