## No. 27263

**L. C. Nuttall, Eileen Nuttall, and Rose Miller v. Ann Leffingwell, Assessor of Boulder County and Walden D. Toevs, Margaret Markey, John P. Murphy, and their successors in office, acting as Boulder County Board of Equalization and Board of County Commissioners of Boulder County, Colorado**

(563 P.2d 356)

Decided May 2, 1977.

---

138

Martin, Riggs & Ehrhart, P.C., Marshall T. Riggs, for petitioners-appellants.

Ann T. Raisch, for respondents-appellees.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

The appellant property owners seek review of a judgment of the Boulder County District Court upholding the county assessor's revaluation of their land for tax purposes for the years 1966, 1967 and 1968. We affirm.

In 1964, the Colorado General Assembly enacted legislation directing county assessors statewide to establish assessed valuations of all taxable property at 30 percent of the property's actual value.[1] Section 137-1-4 be-

---

[1] Colo. Sess. Laws 1964, ch. 94, 137-1-4 at 676, 1965 Perm. Supp., C.R.S. 1963, 137-1-4, now section 39-1-104, C.R.S. 1973 (1976 Supp.). Section 137-1-4 provides in part:

"(1)(a) Except when otherwise prescribed in this chapter, the valuation for assessment of all taxable property in the state shall be thirty per cent of the actual value thereof as determined by the assessor and the commission in the manner prescribed by law, and such percentage shall be uniformly applied, without exception, to the actual value, so determined, of the various classes and subclasses of real and personal property located within the territorial limits of the authority levying a property tax, and all property taxes shall be levied against the aggregate valuation for assessment resulting from the application of such percentage.

. . . .

"(2) In all cases where the valuation for assessment of any taxable real or personal property located in any county of the state or the valuation for assessment of the property and plant of any public utility doing business in the state shall, on the first day of August, 1964, be less than or more than thirty per cent of the actual value thereof, then in each of the years 1965, 1966, and 1967, the respective assessors and the commission shall make annual adjustments to such valuations for assessment, either upward or downward, as the case may require, to the end that the valuation for assessment of such property for the year 1967 shall be thirty per cent of its actual value."

. . . .

came effective August 1, 1964. It required that, to the extent previously existing valuations were inconsistent with the new legislative requirements, adjustments be made in 1965, 1966, and 1967 to bring valuations in line with the desired percentage by the 1967 tax year.

In order to comply with the legislation, the Boulder County Assessor adopted a plan to review the valuations of all taxable land within the county. Pursuant to the plan, the county assessor reviewed and, where necessary, revalued one third of the taxable property in each of the years 1965, 1966, and 1967.[2] As a result of the revaluation program, the assessed valuation of the appellants' property, which property was revalued in the first phase of the Boulder plan, increased tenfold.

The appellants properly, though unsuccessfully, sought administrative relief for the revaluation through both the county assessor and the county board of equalization in 1966, 1967 and 1968. Administrative remedies were not pursued for earlier years, and payment of any tax before 1966 is not now in issue.

The Boulder County District Court held, on certiorari review pursuant to C.R.C.P. 106, that the appellants were not entitled to relief, from which judgment the present appeal is taken.

The appellants' sole contention is that, due to constitutional and statutory requirements of equality and uniformity of taxation,[3] the Boulder County Assessor's revaluation of the appellants' property is invalid. They argue that, since other similarly situated property was not revalued until a later time, the early revaluation of their property was unconstitutional.[4]

---

[2] We note that such a plan appears to be entirely consistent with the three-year scheme set forth in section 137-1-4. See note 1, *supra*.

[3] *Colo. Const.* Art. X, § 3, provides in part:

"All taxes shall be uniform upon each of the various classes of real and personal property located within the territorial limits of the authority levying the tax, and shall be levied, assessed, and collected under general laws, which shall prescribe such methods and regulations as shall secure just and equalized valuations for assessments of taxes upon all property, real and personal, located within the territorial limits of the authority levying the tax . . . ."

1965 Perm. Supp., C.R.S. 1963, 137-1-2, now § 39-1-101, C.R.S. 1973, provides in part:

"The general assembly hereby declares that its purpose in enacting this chapter is to exercise the authority granted in section 3 of article X of the state constitution wherein it is provided, among other things, that all taxes 'shall be levied, assessed and collected under general laws, which shall prescribe such methods and regulations as shall secure just and equalized valuations for assessment of taxes upon all property, real and personal, located within the territorial limits of the authority levying the tax.'"

[4] The appellants would have this court adopt the position that all reassessments must be recorded on the tax rolls on the same date. Their argument is, in effect, that, since they have been underassessed in the past, they must continue to be underassessed until all other property is placed on the tax rolls at comparative values. While we do not pass on the validity of such a proposition, we note that, at the present time, such a scheme would give rise to complaints by those taxpayers whose property was assessed latest in time and, hence, revalued at higher rates due to inflation.

We do not agree with the appellants' argument. The purpose of 1965 Perm. Supp., C.R.S. 1963, 137-1-4, was to establish a uniform state-wide valuation for all taxable property. The legislature sought to effectuate uniformity by the tax year 1967. Our state has neither constitutional nor statutory requirements that all taxable property be revalued before such revaluations are entered on the tax rolls. Rather, the constitutional mandate is that methods and regulations for assessment must "secure just and equalized valuations for assessments."

Although we are presented with a question of first impression, other jurisdictions have almost uniformly upheld cyclical revaluation programs against equal protection attacks. *See, e.g., Apex Motor Fuel Co. v. Barrett*, 20 Ill. 2d 395, 169 N.E.2d 769 (1960); *Recanzone v. Nevada Tax Commission*, 92 Nev. 302, 550 P.2d 401 (1976); *Skinner v. New Mexico Tax Commission*, 66 N.M. 221, 345 P.2d 750 (1959); *Carkonen v. Williams*, 76 Wash.2d 617, 458 P.2d 280 (1969); *Hillock v. Bade*, 22 Ariz.App. 46, 523 P.2d 97 (1974), *adopted per curiam*, 111 Ariz. 585, 535 P.2d 1302 (1975). A cyclical revaluation plan is violative of constitutional equality and uniformity standards only where its implementation results in intentional discrimination, arbitrary action, constructive fraud or grossly and relatively unfair assessments. *Recanzone v. Nevada Tax Commission, supra; Carkonen v. Williams, supra.*

In the present case, the appellants have made no allegation of fraud or intentional or systematic discrimination. On the contrary, the scheme employed by the county assessor was designed to implement the constitutional and statutory mandates of substantial uniformity. The temporary existence of differences in valuations which result from a systematic and definite revaluation plan such as the one involved here does not constitute discrimination of a nature violative of constitutional and statutory uniformity and equality requirements. Absent a showing of conduct which amounts to an intentional violation of the essential principle of *practical uniformity*, the appellant's constitutional challenge must fail. *Sunday Lake Iron Co. v. Township of Wakefield*, 247 U.S. 350, 38 S.Ct. 495, 62 L.Ed. 1154 (1918).

Judgment affirmed.
MR. CHIEF JUSTICE PRINGLE does not participate.