620 P.2d 777

Howard K. and Mavis JUSTUS et al., Appeals No. 77–A–641 to No. 77–A–879 incl. and No. 77–A–979 to No. 77–A–987 incl., Plaintiff–Appellants,

v.

BOARD OF EQUALIZATION OF KOOTENAI COUNTY, State of Idaho, Defendant–Respondent.

No. 13234.

Supreme Court of Idaho.

Dec. 9, 1980.

James R. Michaud and Thomas A. Mitchell, Coeur d'Alene, for plaintiffs–appellants.

David H. Leroy, Atty. Gen., David G. High, Deputy Atty. Gen., Boise, Glen E. Walker, Kootenai County Prosecutor, Coeur d'Alene, for defendant–respondent.

BAKES, Justice.

This is an appeal from a district court decision upholding the 1977 revaluation plan of the Kootenai County assessor. The issue presented is whether the revaluation plan meets constitutional and statutory standards of uniformity and continuity. We hold that it does.

Robert Conley took office as Kootenai County assessor on January 10, 1975. Conley had previously worked in the assessor's office since 1970. During the period between January, 1975, and January, 1977, the assessor's office under Conley focused on revaluing mobile homes and a few residential properties, appraising new construction, revaluing agricultural land put under irrigation, and conducting a "maintenance program" which included viewing all property in the county to insure that new construction was appraised. It is not clear when the last complete revaluation of property in Kootenai County took place. Phil Long, an administrator for the Idaho State Tax Commission for the past twenty–eight years, testified that the last revaluation program in Kootenai County was completed in 1950. Conley testified that he thought his predecessor had commenced a program of reassessment in 1970. Conley was not familiar with the nature or extent of his predecessor's plan.

In early 1977, the assessor's office prepared a revaluation plan designed to correct inequities in the existing tax rolls. These inequities were due in part to the lack of a comprehensive evaluation plan for Kootenai County. Rapid growth and inflation also contributed to the inequities in the tax rolls. For example, many older homes had not been recently reappraised and were therefore undervalued; newer residences were more accurately valued.

Formulation of the revaluation plan was also precipitated by a decision handed down by the Idaho Board of Tax Appeals in 1976, which found gross inequities in the 1976 property tax valuations in Kootenai County. The board discovered that many properties were appraised at about 40% of market value. The State Tax Commission sent personnel to Kootenai County in January of 1977 to study the situation. They confirmed the disparities and assisted in the preparation of the revaluation plan.

A two–tiered revaluation plan was designed to revalue all property in Kootenai County within three years of the plan's adoption. Under the first tier of the plan, certain taxable property within certain specified tax code areas were to be revalued to 80% of the market value for the 1977 tax roll. These tax code areas were selected for initial revaluation because of their high density and growth rate. All residential lands and improvements within the tax code areas were scheduled for revaluation in 1977, as well as rural residential subdivisions of high density close to these tax code areas. Commercial lots within the tax code areas were scheduled for revaluation in 1977 but improvements on those lots were not scheduled for revaluation until 1978. Conley later postponed revaluation of commercial improvements until 1979. The tax code areas scheduled for 1977 revaluation did include some lakeshore property, but lakeshore property in general was not scheduled for revaluation until 1978. All agricultural lots and timberland were scheduled for revaluation for the 1977 tax rolls. All residential property and commercial lots were scheduled for revaluation for the 1978 tax roll.

The purpose of the plan was to concentrate reappraisal in those areas with the greatest disparities in valuation and to revalue as much of that property as possible for inclusion in the 1977 tax roll. In this manner the taxing authorities hoped to eliminate as much inequity in the county taxing system as possible. The evidence indicated, and the trial court found, that in 1977 85% of the taxable acreage was revalued or found to be at 80% of market value and that properties representing approximately 70% of the total assessed valuation of the county were revalued for the 1977 tax roll.

The second tier of the revaluation plan was to being at the same time as the first tier but was not scheduled to be completed until the end of 1979. Under the second tier, an independent appraiser was scheduled to revalue all of the taxable property in Kootenai County to 100% of market value. Once completed, the 1979 revaluation would provide a uniform base upon which a five year cyclical or rotating plan could be implemented commencing in 1980.[1]

To summarize and simplify: the majority of the taxable property was to be revalued to 80% of market value in 1977; the remainder (except commercial improvements) was to be revalued to 80% in 1978; and all taxable county property was to be revalued at 100% of market value in 1979.

The revaluation plan was adopted in February, 1977. Tax rolls were required to be completed by June 15, 1977. Any revaluation which occurred between February and June of 1977 had to be carried out on the 1977 budget, which did not anticipate a county–wide revaluation.

The appellant taxpayers filed a protest of the revaluation plan with the Board of Equalization of Kootenai County on June 27, 1977. On July 22, 1977, the board issued findings of fact, conclusions of law, and an order upholding the revaluation plan.

On August 5, 1977, the taxpayers appealed this decision to the Idaho Board of Tax Appeals. On September 2, 1977, the Idaho State Tax Commission moved to intervene, and this motion was granted on September 15, 1977. On January 13, 1978, the Board of Tax Appeals issued its finding of fact, conclusions of law and order. As the board saw it, the primary issue concerned the treatment accorded commercial improvements. The board held that the decision to exclude commercial improvements from both the 1977 and 1978 revaluations constituted preferential treatment and intentional discrimination. The board found that average valuations of residential property, with the exception of new construction and major improvements to existing structures, were at approximately 40% of market value for the 1976 tax year. The board also found that there was no indication that the percentage was different for commercial property. Accordingly, the board ordered that the taxpayers' property be valued at its 1976 valuation, save that no revalued property could be reduced to less than 50% of its value shown for 1977.

On February 13, 1978, Conley and Kootenai County appealed the decision of the Idaho Board of Tax Appeals to district court. On February 21, 1978, the taxpayers cross appealed.

On March 9, 1978, the State Tax Commission moved to intervene before the district court. This motion was orally granted on the day of trial. On May 22, 1978, the district court, sitting without a jury, conducted a trial *de novo*. *See* I.C. § 63–3812(c). At trial, the taxpayers chose to rely upon the record previously made before the Board of Equalization and the Board of Tax Appeals. The tax authorities chose to augment the record with further testimony. Mindful of the Board of Tax Appeals' finding that there was no evidence of the actual valuation of commercial property, the taxing authorities introduced evidence indicat-

1. The assessor's intention to begin a cyclical program in 1980 may be frustrated by the passage of new statutes implementing Idaho's "1% initiative." *See* I.C. § 63–221 (as amended 1979 Idaho Sess. Laws ch. 18, § 3, p. 26).

Under those statutes, assessors are required to appraise all parcels within their jurisdictions at 1978 market value for use during the 1980 tax year, with limited increases to reflect inflation in subsequent tax years. *See* I.C. § 63–923.

ing that commercial properties were already valued in excess of 80% of market value in the years 1976 and 1977.

On September 29, 1978, the district court issued its memorandum decision reversing the Board of Tax Appeals. The court found that the plan did not intentionally or actually discriminate against the taxpayers. The district court also granted the taxpayers' motion to treat the matter as a class action, but deemed the issue moot due to its decision on the merits. Judgment was entered in favor of the taxing authorities on November 8, 1978. In response to taxpayers' proposals, the court entered amended findings of fact and conclusions of law dated January 30, 1979. It also redated its original judgment to be effective January 30, 1979. From this judgment, the taxpayers appeal. We affirm.

The taxpayers contend that the three year revaluation plan discriminated against them in violation of Art. 7, § 5, of the Idaho Constitution, the equal protection clause of the United States Constitution, and former I.C. § 63–221 (amended 1979 Idaho Sess. Laws, ch. 18, § 3, p. 26). Appellants argue that those taxpayers whose properties were revalued and placed on the 1977 tax roll at higher valuations were discriminated against in favor of those taxpayers whose properties were not revalued in 1977.

■ Both Art. 7, § 5, of the Idaho Constitution, and the federal equal protection clause proscribe unlawful discrimination by taxing authorities. While various standards have been articulated under either provision, there is little practical distinction between the two. *Recanzone v. Nevada Tax Comm'n*, 92 Nev. 302, 550 P.2d 401 (1976). A taxing plan offensive to one also violates the other. *Id.; Patterson v. State, Dept. of Revenue*, 171 Mont. 168, 557 P.2d 798 (1976).

The foundational decision on property taxation and the equal protection clause is *Sunday Lake Iron Co. v. Wakefield Township*, 247 U.S. 350, 38 S.Ct. 495, 62 L.Ed. 1154 (1918). There, the United States Supreme Court upheld a remarkably disproportionate revaluation of the plaintiff's mining properties. In the year in question, that plaintiff's property had been revalued and assessed at full market value, whereas other similar properties were assessed at no more than one–third of actual value. The taxing authorities intended to revalue remaining properties in the next year of the plan. The Court held that in order for a taxpayer to prevail, he must demonstrate some discriminatory animus on the part of the taxing authority, "something which in effect amounts to an intentional violation of the essential principle of practical uniformity." *Id.* at 353, 38 S.Ct. at 495. The Court went on:

"[W]e are unable to conclude that the evidence suffices clearly to establish that the state board entertained or is chargeable with any purpose or design to discriminate. Its action is not incompatible with an honest effort in new and difficult circumstances to adopt valuations not relatively unjust or unequal.... The very next year a diligent and, so far as appears, successful effort was made to rectify any inequality." *Id.* at 353, 38 S.Ct. at 495.

*See also Xerox Corp. v. Ada County Assessor*, 101 Idaho 138, 609 P.2d 1129 (1980).

Equal protection analysis has come a long way since 1918, but the quantum of deference given to state taxing decisions remains essentially the same. In *School Dist. No. 25 v. State Tax Comm'n*, 101 Idaho 283, 288, 612 P.2d 126, 131 (1980), we quoted more recent United States Supreme Court language:

"The Equal Protection Clause does not mean that a State may not draw lines that treat one class of individuals or entities differently from the others. The test is whether the difference in treatment is an invidious discrimination. ... Where taxation is concerned and no specific federal right, apart from equal protection, is imperiled, the states have large leeway in making classifications and drawing lines which in their judgment produce reasonable systems of taxations." *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 359, 93 S.Ct. 1001, 1003, 35 L.Ed.2d 351 (1973).

As we have noted, the functional requirements of Art. 7, § 5, of the Idaho Constitution are similar. That provision reads: "All taxes shall be uniform upon the same class of subjects within the territorial limits, of the authority levying the tax, and shall be levied and collected under general laws, which shall prescribe such regulations as shall secure a just valuation for taxation of all property, real and personal. . . ."

■ A presumption of constitutionality attaches to state taxing decisions; the opposing party shoulders the burden of overcoming such presumption. *School Dist. No. 25 v. State Tax Comm'n, supra; Title & Trust Co. v. Board of Equalization, Ada County,* 94 Idaho 270, 486 P.2d 281 (1971); *Sunday Lake Iron Co. v. Wakefield Township, supra; Skinner v. New Mexico State Tax Comm'n,* 66 N.M. 221, 345, P.2d 750 (1959).

■ While practical uniformity is the constitutional goal, absolute uniformity is an unattainable ideal. *School Dist. No. 25 v. State Tax Comm'n, supra; Xerox Corp. v. Ada County Assessor, supra; Title & Trust Co. v. Board of Equalization, Ada County, supra; Ernest W. Hahn, Inc. v. County Assessor,* 92 N.M. 609, 592 P.2d 965 (1978); *Perkins v. County of Albemarle,* 214 Va. 240, 198 S.E.2d 626 (1973), *modified on rehearing* 214 Va. 416, 200 S.E.2d 566 (1973). Essentially, a revaluation plan is constitutionally lacking in uniformity only if it is arbitrary, capricious, fraudulent, or intentionally discriminatory. *Xerox v. Ada County Assessor, supra; Title & Trust Co. v. Board of Equalization, Ada County, supra; Patterson v. State Dept. of Revenue,* 171 Mont. 168, 557 P.2d 798 (1976). *See*

*Nuttall v. Leffingwell,* 193 Colo. 137, 563 P.2d 356 (1977), *Recanzone v. Nevada Tax Comm'n,* 92 Nev. 302, 550 P.2d 401 (1976).

■ In determining whether a revaluation plan meets constitutional standards of equality and uniformity, all relevant circumstances should be taken into consideration. Several factors pertinent to the above determination are: the limitations of time and staff; the nature and extent of existing inequities in the tax rolls; the extent to which such existing inequities are rectified by the plan; the amount and duration of temporary disparities under the plan; available alternatives; and whether non–implementation of the plan would perpetuate existing inequities. *See Title & Trust Co. v. Board of Equalization, Ada County, supra; Hillock v. Bade,* 22 Ariz.App. 46, 523 P.2d 97 (1974), *aff'd* 111 Ariz. 585, 535 P.2d 1302 (1975); *Patterson v. State Dept. of Revenue, supra; Ernest W. Hahn, Inc. v. County Assessor, supra; Morrison v. Rutherford,* 83 Wash.2d 153, 516 P.2d 1036 (1973).

Tested against the considerations set forth above, the Kootenai County revaluation plan did not violate the uniformity provision of the Idaho Constitution or the equal protection clause of the United States Constitution.[2]

■ The 1977 plan was formulated after the assessor's 1977 budget had been set. Conley testified that it would have been impossible for his office to have revalued all the taxable property in the county in a year's time. The trial court found that the assessor "made maximum use of the monies and personnel available to him for the implementation of the plan."[3] The trial court

2. At the outset, we should distinguish this case from those involving no plan at all, *e. g., Ernest W. Hahn, Inc. v. County Assessor,* 92 N.M. 609, 592 P.2d 965 (1978), or those where gross discrimination has resulted from the assessor's willful departure from an established cyclical program, *Dore v. Kinnear,* 79 Wash.2d 755, 489 P.2d 898 (1971). It is true that the assessor did deviate from the original 1977 plan by moving back the date of revaluation for commercial improvements until 1979. It was this fact that prompted the Idaho Board of Tax Appeals to

conclude that the plan was unconstitutional. However, at the trial before the district court, ratio studies prepared by the State Tax Commission showed that commercial properties in general were already valued in excess of 80% of market value. Revaluation of these properties in 1977 or 1978 was therefore unnecessary.

3. Appellants contend that lack of time, staff or funds is no defense to their action. Appellants rely on language in I.C. § 63–221 which requires the Board of County Commissioners to furnish additional funds and personnel in order

also found that the revaluation corrected "gross inequities" in prior tax rolls. Witnesses for the county testified that the plan was intended to, and did, quickly revalue properties in those areas where prior disparities were most prevalent. Hence, those taxpayers who suffered the greatest increases by revaluation in 1977 were by the same token those taxpayers who had benefited by lack of uniformity in prior tax years. Also, since nearly all the property was scheduled to be valued to 80% or more of market value for the 1978 tax roll, the temporary disparities of which the appellant taxpayers complain existed for only a single year, 1977.

Appellant taxpayers ask that their properties be taxed at the valuations used as the basis for the 1976 assessment roll. That suggestion is a step in the wrong direction. In essence, appellants ask that we return Kootenai County to the markedly disparate valuations of the past until such time as the entire comprehensive revaluation is completed. However, as an Arizona court noted, "[T]his suggested alternative would only result in a prolongation of the inverse discrimination already being enjoyed by the plaintiff–taxpayer at the expense of many of the other taxpayers .... " *Hillock v. Bade*, 523 P.2d at 105.

■ A multi–year revaluation plan is not constitutionally disuniform merely because only a portion of the county property is reappraised and entered on the tax rolls in a given year. For example, even though cyclical revaluation plans reappraise only a portion of the taxable property in each year of a recurring cycle, they have consistently passed constitutional muster where they are systematic, consistent and continuous. *Nuttall v. Leffingwell*, 193 Colo. 137, 563 P.2d 356 (1977); *Patterson v. State, Dept. of Revenue*, 171 Mont. 168, 557 P.2d 798 (1976); *Recanzone v. Nevada Tax Comm'n*, 92 Nev. 302, 550 P.2d 401 (1976); *Carkonen v. Williams*, 76 Wash. 2d 617, 458 P.2d 280 (1969). Non–cyclical comprehensive revaluation plans have also been held to meet constitutional uniformity and equal protection requirements, even if the plan cannot be carried out and completed in a single year. *Probst v. City of New Orleans*, 337 So.2d 1081 (La.1976), *cert. denied* 430 U.S. 916, 97 S.Ct. 1329, 51 L.Ed.2d 594 (1977); *Skinner v. New Mexico State Tax Comm'n*, 66 N.M. 221, 345 P.2d 750 (1959); *Sunday Lake Iron Co. v. Wakefield Township*, 247 U.S. 350, 38 S.Ct. 495, 62 L.Ed. 1154 (1918). *See* Annot., 76 A.L.R.2d 1077 (1961).

■ In this case, the Kootenai County assessor's five year cyclical plan was not scheduled to begin until 1980,[4] after the complete revaluation was entered on the 1979 tax rolls. The appellant taxpayers contend that former I.C. § 63–221 [5] and

---

to carry out the continuing program of valuation. We agree that personnel and budget constraints cannot serve as an absolute defense, but still feel that limitations of time and staff are factors which can be taken into consideration. We doubt whether the Kootenai County assessor could hide behind limitations of time and staff in justifying pre-1977 valuations. On the other hand, we must also be cognizant of the practicalities of budget contraints when it comes to discharging governmental functions.

4. As previously noted, recent legislation probably precludes implementation of a cyclical reappraisal program in 1980. *See* n.1, *infra*.

5. I.C. § 63–221 was amended in 1979 to require comprehensive valuation in 1980 at 1978 market values, to be increased thereafter at limited increments to reflect inflation. 1979 Idaho Sess. Laws ch. 18, § 3, p. 26. *See* I.C. § 63–923(2)(b). Prior to the amendments, I.C. § 63–221 read as follows:

"COUNTY VALUATION PROGRAM TO BE CARRIED ON BY ASSESSOR.–It shall be the duty of the county assessor of each county in the state to conduct and carry out a continuing program of valuation of all properties under his jurisdiction pursuant to such rules and regulations as the state tax commission may prescribe, to the end that all parcels of property under the assessor's jurisdiction are appraised at least every five (5) years. The county assessor shall maintain in the respective offices sufficient records to show when each parcel or item of property was last appraised.

"The state tax commission is hereby authorized, empowered, and directed to promulgate rules and regulations for the implementation of this program, and to provide any such county assessor with such supervision and technical assistance as may be necessary.

**749**

State Tax Commission regulations require a cyclical plan. While we agree that a five year cyclical revaluation program was contemplated, we do not, in these circumstances, think it was mandatory.

First, former I.C. § 63–221 required only that the county assessor implement "a continuing program of valuation . . . to the end that all parcels of property under the assessor's jurisdiction are appraised at least every five (5) years." Without a doubt, the 1977 plan, when fully implemented, will revalue all the taxable property in Kootenai County in a five year period. The plan is certainly a continuing one, especially in view of the fact that the assessor intended that it be followed by a five year cyclical program.

Secondly, Art. 221 of the State Tax Commission's regulations listed several "suggested" plans of a cyclical nature, but did not require that any of the stated plans be adopted.

Kootenai County was confronted with a problem: gross inequities in the existing tax rolls caused by inflation, growth and lack of an established program of revaluation. The taxing authorities here came up with an orderly, systematic and non–discriminatory solution. They devised a plan intended to rectify the greatest inequities in the shortest amount of time. They revalued the majority of property in year one, the remainder (except commercial improvements) in year two, and achieved a uniform base in year three. Immediate implementation of a five year cyclical plan would have left a portion of the gross inequities on the tax rolls for five years. The present plan virtually eliminated significant disparities in two years.

We therefore affirm the district court's conclusion that the revaluation plan commenced by the Kootenai County assessor in 1977 is systematic, consistent, coherent, orderly, non–discriminatory and in compliance

with pertinent statutes and the Idaho and United States Constitutions. We also agree with the trial court's conclusion that the class action issue is moot in view of the disposition of the case.

Costs to respondents.

DONALDSON, C. J., SHEPARD and McFADDEN, JJ., and BEEBE, J. Pro Tem., concur.

"The board of county commissioners of each county shall furnish the assessor with such additional funds and personnel as may be required to carry out the program hereby provided, and for this purpose may levy annually an ad valorem tax of not to exceed two (2) mills on each dollar of assessed valuation of taxable property in the county to be collected and paid into the county treasury and appropriated to the ad valorem valuation fund which is hereby created."