## CIRCUIT COURT OF AUGUSTA COUNTY

Certain Citizens
of Augusta County

v.

Augusta County
Board of Supervisors

February 7, 2011

Case No. CL10000602

By Judge Victor V. Ludwig

On April 28, 2010, the Augusta County Board of Supervisors (the Board) adopted an Order for the Imposition of Taxes on real estate located in Augusta County (the Order). On May 27, 2010, the Commonwealth's Attorney filed a Petition and Notice of Appeal of an Order of Imposition of Taxes (the Petition) on behalf of certain citizens of Augusta County (Certain Citizens) under authority of Va. Code § 58.1-3003 after being presented with the petitions described in the statute.

> If the attorney for the Commonwealth of any county is of the opinion that an order for imposition of taxes made by his governing body is illegal or if he receives a petition of one per centum of the registered voters of the county, but no fewer than fifty such voters, demanding that he appeal such order, such attorney shall appeal therefrom, within thirty days after such order is made, to the circuit court of the county and such appeal shall operate as a supersedeas. Without waiting the final decision of the appeal, the governing body may rescind its order and impose taxes according to law. If the court, on the hearing of the appeal, is of the opinion that the order is contrary to law, it shall reverse the same and direct the governing body

to enter such order as to the court may seem right. If money be collected under any such order, which is afterward rescinded or reversed, the treasurer shall forthwith repay such money to the person from whom it was collected. If he fails so to do, a motion may be made and judgment obtained, in like manner as in cases provided in § 58.1-3140.

Va. Code Ann. § 58.1-3003 (2010). The Board did not raise, but could have, the fact that the filing was untimely because it was not filed "within thirty days after [the Order] was made." Because of the complexity of distinguishing between subject matter jurisdiction and actual jurisdiction without the parties' having argued the issue, other than to note the question, the Court is disinclined to address, *sua sponte*, whether or not it has jurisdiction to hear this case and will assume that it does.

The gist of the claim is that the reassessment of property (the Reassessment) on which the Order was based was illegal and in violation of the Constitution of Virginia. Because of the alleged illegality of the Reassessment, Certain Citizens argue that the subsequent property tax levy embodied in the Order, which was based partly on the Reassessment, is also illegal. The Board demurred on the ground that the appeal fails to allege any error, procedural, statutory, constitutional, or otherwise, in the Order.

### Demurrer

A demurrer tests the legal sufficiency of a claim and asks whether the facts alleged, taken as true, are sufficient to support a cause of action. Thus, in deciding a demurrer, the Court resolves all factual disputes in favor of the non-moving party and allows all reasonable inferences to benefit the non-moving party. *See, e.g., Fox v. Custis*, 236 Va. 69, 71 (1988). A demurrer does not admit, however, the correctness of a party's conclusions of law. *Id.* For the purposes of this matter, therefore, I will assume that the facts as pleaded in the Petition are true and will draw reasonable inferences from those facts, but I may not assume the asserted conclusions of law are correct.

### Analysis

In order to survive the Board's Demurrer, Certain Citizens must: (1) allege sufficient facts to support their claim that the Reassessment was illegal or unconstitutional; and (2) have sufficient support in the law for the proposition that, if the Reassessment was illegal, the resulting tax levied against real property located in Augusta County is, *ipso facto*, also illegal.

Certain Citizens have failed in their obligation to allege facts to support their legal claim. The Petition states only that Certain Citizens

"believe that the reassessment of certain parcels of real estate . . . was not done in a lawful manner" (Petition, ¶ 2), but it alleges no facts to support this legal conclusion. Certain Citizens' naked allegations of illegality and unconstitutionality are conclusions of law and are insufficient by themselves to support a cause of action.

The reasons offered in support of Certain Citizens' assertion, "that the reassessments of certain parcels of real estate . . . was not done in a lawful manner," are themselves legal conclusions for which they have alleged no supporting facts. First, the Petition does not identify which "certain parcels of real estate" were not assessed in a lawful manner. Next, it alleges that the tax is contrary to Article X, Sections 1 and 2, of the Constitution of Virginia[1] because the Reassessment "was not uniform upon the same class of subjects (real estate) within . . . Augusta County," but they do not identify to what class of real estate the Petition refers or the parcels affected. The Petition then alleges the Reassessment is unconstitutional because "the assessments were not at fair market value." ¶ 5(a). It is not clear whether this paragraph addresses the Reassessment as a whole or whether it is limited to the "certain parcels." Certain Citizens then declare in the Petition that the "acceptance and certification of the 2009 reassessment by the Commissioner of Revenue . . . was not in accordance with laws because such reassessment was not uniform and at fair market value as required by Article X, Sections 1 and 2, of the Constitution of Virginia." ¶ 5(b). Finally, Certain Citizens allege that the Reassessment "contains a number of gross inaccuracies making the assessments invalid. . . ." ¶ 5(c). The Petition contains no specific factual allegation to support these conclusions and therefore provides the Board with insufficient information to allow it to know the specific nature of the claims against it.

However, even if Certain Citizens had alleged sufficient facts to support their claims that the Reassessment was illegal or unconstitutional, their remedial theory depends upon a dubious legal conclusion that has no logical and only transparent legal support. Certain Citizens' argue, without authority, that "[s]ince the reassessment . . . was illegal, it therefore follows that an order for imposition of taxes on said real estate based upon these illegal reassessments is also illegal." ¶ 3. In fact there is, as I noted, transparent legal authority for the proposition, but it does not apply in the context of the pending case.

This unsupported inference is necessary to Certain Citizens' petition because they have pursued relief through Va. Code § 58.1-3003.

---

[1] Article X, Section 1, requires that all property taxes be uniformly levied: "All [property] taxes shall be levied and collected under general laws and *shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax. . . .*" Va. Const., Art. X, § 1 (emphasis added). Section 2 requires: "All assessments of real estate and tangible personal property shall be at their fair market value, to be ascertained as prescribed by law." Va. Const., Art. X, § 2.

Unfortunately, this statute has never, as far as I can tell, been subjected to analytical judicial interpretation, and I have uncovered no decision that illuminates its scope. But by its plain terms, § 58.1-3003 provides a remedy only for an allegedly illegal order of taxation and for no other purpose. As stated above, Va. Code § 58.1-3003 allows the Commonwealth's Attorney to appeal from an order of taxation, on his own initiative, or upon the petition of at least one percent of the registered voters of the county, if he is, or the petitioners are, "of the opinion that an order for imposition of taxes made by his governing body is illegal. . . ." Va. Code Ann. § 58.3003 (2010). Therefore, in order to prevail, Certain Citizens must argue not merely that the Reassessment was erroneous or improper but that the Order was illegal. Hence, the issue is whether Va. Code § 58.1-3003 may be invoked to challenge the Order solely on the grounds that the Reassessment was not uniform and was not at market value.

As a general proposition and as a bit of context, municipalities and counties levy property taxes by applying the locality's tax rate to the assessed value of the property in question. Notwithstanding the Constitutional requirement otherwise, in the past, and perhaps still today, in some jurisdictions, the assessed value was determined by multiplying the property's fair market value, or appraised value, by the percentage of fair market value subject to tax in that locality. See Fray v. County of Culpeper, 212 Va. 148, 149 (1971) (noting that most local taxing authorities apply a fixed multiple or percentage to fair market value in order to arrive at assessed value). Hence, the practice in other jurisdictions gives rise to decisions by the appellate courts' drawing a distinction between the "appraisement" or the "appraised value" and the "assessment" or the "assessed value." Because Augusta County does assess at full value (without unconstitutionally applying a percentage reduction), in this case, the Reassessment is, in fact, the reappraisal.

In light of that, it is clear that assessing, or, in the case of Augusta County, appraising, the value of property is a necessary predicate to levying property taxes, and, therefore the levying of property tax (by the Order) and the Reassessment (in this case, the appraisement) of property values are closely related. Indeed, the Supreme Court of Virginia has noted that the Constitutional requirement of uniformity applies both to the levying of taxes and to the valuation of property. See Southern Ry. v. Commonwealth, 211 Va. 210, 214 (1970) ("The courts . . . have sought to enforce the equality in the burden of taxation by insisting upon uniformity in the mode of assessment and in the rate of taxation."). Nevertheless, the dependent relationship of these two distinct factors in the equation of calculating property taxes does not render them interchangeable.

Certain Citizens' Petition ignores the critical distinction between an illegal "order for imposition of taxes" (or levy), from which Va. Code § 58.1-3003 is a viable means of appeal, and an erroneous "assessment," for

which that statute, by its plain terms, provides no relief (but others do, on an individual basis). The Supreme Court of Virginia has commented on the important distinction between a levy and an assessment:

> There is a marked difference between making a levy and the assessment of property for the purpose of taxation. A levy is merely fixing the subject and the amount at which property is to be taxed. An assessment consists in listing the property and putting a value thereon to which the rate fixed by the levy is to be applied. It is quasi judicial.

*Breckenbridge v. County School Bd.*, 146 Va. 1, 5 (1926). In the same year, the Court noted: "Levy and assessment have very different meanings. The levy of taxes is a legislative function, and declares the subject and rate of taxation. Assessment is quasi judicial, and consists in making a list of the taxpayer's property and fixing its valuation, or appraisement." *McGinnis v. Nelson County*, 146 Va. 170, 173 (1926). *See also Richmond v. Eubank*, 179 Va. 70, 83 (1942) (quoting *Breckenbridge* and *McGinnis*). Here, Certain Citizens conflate the two, attempting to correct allegedly unconstitutional assessments by means of appealing the Order, by which the Board determined the rate to be applied to the value of the property. Certain Citizens have not alleged any defect or impropriety with the "subject or rate" of the property tax. *Breckenbridge*, 146 Va. at 5. Rather, the alleged illegality concerns only the "valuation, or appraisement" of the property. *Id.* Va. Code § 58.1-3003 is available to remedy the former, but does not, by its terms, offer a remedy for the latter. Neither legal authority nor logic justifies the application of Va. Code § 58.1-3003 as the Petition demands.

It is unclear what Certain Citizens mean by the allegation that the Order is "illegal." One example of an "illegal tax" is described in *Charlottesville v. Marks' Shows*, 179 Va. 321 (1942). In that case, the tax imposed by locality was invalid because the City of Charlottesville had no authority under its charter to impose it. Another example is described in *Turnbull v. Brunswick County*, 122 Va. 645 (1918), a case in which the taxing authority exceeded a specific statutorily prescribed limit on the rate of taxation without following the appropriate procedure to do so. Likewise, in *Todd v. County of Elizabeth City*, 191 Va. 52 (1950), the Court addressed an attack on the validity of the underlying ordinance pursuant to which a tax was imposed. Certain Citizens do not allege, and could not persuasively assert, that the Board adopted the Order without authority to do so.

Indeed, the County not only has authority but is Constitutionally mandated to levy property taxes. *See* Va. Const., Art. X, § 1 ("All property . . . shall be taxed."). *See also Sussex County v. Jarratt*, 129 Va. 672, 694 (1921) ("[T]he mere mandate of the Constitution that taxes shall be laid on certain property by the General Assembly, or a board of supervisors, does

not by itself impose the tax, though failure to do so may be a breach of duty by the officials charged therewith.")

In contrast, and as the Board correctly notes, all of the defects alleged by Certain Citizens pertain to the quadrennial reassessment and not to the Order, and nothing in the Petition alleges any defect in the Order itself. They do not allege any procedural violation in the Board's adoption of the Order or that the Board was without authority to adopt the Order. Certain Citizens' allegation that the Order is illegal hinges solely on their legal theory that an alleged defect in the Reassessment imputes illegality in the resulting Order imposing the property tax levy. In other words, the claim is not that the Order, of itself, is illegal, or that any aspect of its adoption was improper. Rather, the Order is illegal, under their theory, only to the extent to which the Reassessment was erroneous. Thus, Certain Citizens' fundamental claim is that the Reassessment was unconstitutional "because it was not uniform and at fair market value," but the relief they seek is reversal of the Order.

The Code of Virginia provides numerous, specific means by which a citizen, perceiving that his property has been assessed improperly or unconstitutionally, may challenge the assessment. Va. Code § 58.1-3350 provides that "[a]ny person aggrieved by any assessment under this chapter may apply for relief to the board of assessors, or if none, to the board of equalization . . . or may directly apply for relief to the appropriate circuit court. . . ." Va. Code Ann. § 58.1-3350 (2010). Each locality's Board of Equalization is under a statutory mandate to hear "complaints of inequalities wherein the property owners allege a lack of uniformity in assessment or errors in acreage in such real estate assessments," in addition to "complaints that real property is assessed at more than fair market value." Va. Code Ann. § 58.1-3378 (2010). The Board of Equalization is also empowered "with the especial duty of increasing as well as decreasing assessments, whether specific complaint be laid or not, if in its judgment, the same be necessary to equalize and accomplish the end that the burden of taxation shall rest equally upon all citizens of such county or city." Va. Code Ann. § 58.1-3379 (2010). In some circumstances, aggrieved property owners may bring their complaints directly to the Commonwealth's Commissioner of Revenue, who is empowered to adjust erroneous assessments. Va. Code Ann. §§ 58.1-3980 through 58.1-3983 (2010).

To be sure, these statutory provisions provide only for individual relief. Va. Code § 58.1-3350 provides relief to "any person" who is aggrieved by an assessment. Similarly, § 58.1-3379 contemplates complaints brought before the board of equalization by individual taxpayers. See id., § 58.1-3379(B), (C). Individual relief for erroneous or non-uniform assessments, as opposed to the collective remedy provided by § 58.1-3003 for illegal taxes (and relied upon in this case by Certain Citizens), is appropriate and perhaps even necessary in light of the inherent uncertainty in property valuation

and the improbability of achieving absolute uniformity in assessments. The Supreme Court of Virginia has acknowledged that real property valuation is "not an exact science." *Southern Ry. v. Commonwealth*, 211 Va. 210, 214 (1970). Indeed, the Court has concluded that "absolute and constant uniformity may be an unattainable ideal." *Perkins v. County of Albemarle*, 214 Va. 416, 418 (1973). This is because property valuation must take account of many qualitative variables and factors:

> While size and cost of the property may be factors to be given weight, there are many other factors which tend to increase or diminish such value; for instance, the design, style, location, appearance, availability of use, and the economic situation prevailing in its area, as well as other circumstances.

*Smith v. City of Covington*, 205 Va. 104, 108–09 (1964). In light of the need to evaluate property individually in order to account for the variables that ultimately determine its value, it is arguably inappropriate to allow for collective relief from allegedly erroneous assessments, as Certain Citizens seek with this appeal. In other words, the criteria that determine fair market value of a property is unique to each property, and the remedy for a faulty assessment must also be unique to the subject property.

I note, however, that the Supreme Court of Virginia has recognized that the Code and the Constitution do not require an annual visual inspection of each property:

> [T]he statute does not require that, for purposes of making *appraisals* upon which annual *assessments* are made, all parcels within the city or county be visually inspected once each year. As the General Assembly was aware, physically and fiscally such a requirement would impose an unreasonable, if not impossible, burden upon both the taxing authority and the taxpayer.
>
> Nor is the uniformity mandate of the Constitution, as we have construed it, so broad as to require such annual visual inspection. We recognized in our opinion that "absolute and constant uniformity may be an unattainable ideal." The constitutional mandate requires that, in the ascertainment of fair market values and the imposition of assessments upon those values, the taxing authority must implement and administer the annual assessment and equalization system in a manner which avoids all disuniformity reasonably avoidable.

*Perkins*, 214 Va. at 418.

The remedial mechanism employed here under Va. Code § 58.1-3003 is a blunt instrument; it is designed to provide a remedy for illegal taxes, and therefore cloaks a minority of the population with the power to challenge an order of taxation imposing a burden of general applicability; that is, where a levy is improper or illegal, it generally affects all citizens equally. This principle is consistent with the Supreme Court's observation that the levy of taxes is a legislative function. *McGinnis*, 146 Va. at 173. Addressing errors and inequalities in assessments, however, calls for much more precise remedial tools, because, as noted above, a property valuation is distinct to each parcel. Given the inherent variability in property valuation, such a wide-sweeping remedial measure would be patently inappropriate for this purpose; this principle follows from the Supreme Court's pronouncement that property assessment is a "quasi-judicial" function. *Id.*

Moreover, the use of Va. Code § 58.1-3003 to challenge the Reassessment raises serious issues of justiciability; it is doubtful that the Certain Citizens joined in this appeal, roughly 1% of the registered voters in the County, can convincingly assert standing to appeal the reassessments of the property of the remaining approximately 99% of voters in Augusta County, not to mention the unquantified percentage of landowners who are not participating and not registered to vote. That does not, of course, diminish or call into question Certain Citizens' right properly to attack the Order, as opposed to the assessments, pursuant to this statute, but that is not what they have done in this case.

I recognize that the statutory remedies available for challenging a reassessment are arguably inadequate as a means of challenging the methodology of the assessment; that is, if a property owner is confined to challenging the reassessment of his particular tract, it would seem that no ready remedy exists for a collection of property owners to challenge an entire reassessment in the same way that a minority of citizens are entitled to assert, under Va. Code § 58.1-3003, that a levy of tax, as applied to the entire locality, is illegal. Politically, however, it is unlikely that a reassessment that is so thoroughly flawed would escape remedy. If a locality addresses an abundance of appeals from individual property owners through the proper remedial channels provided by statute, e.g. the board of equalization, it is likely that, in the process of addressing these challenges, any flaw in the methodology of the reassessment would come to light. Even if it did not come to light, the sheer volume of appeals, and costs associated with hearing them, might cause the locality to take a very long look at the reassessment methodology.

As noted earlier in this letter, one decision of the Supreme Court of Virginia provides tenuous, superficial support for Certain Citizens' argument. In *Perkins v. County of Albemarle*, 214 Va. 240 (1973), the plaintiffs, brought a declaratory action, applicable only to their own properties, alleging that the real estate tax assessment procedures used by

Albemarle County violated the Constitution of Virginia and the federal Constitution and asked that the Court declare the assessments of the plaintiffs' properties to be void. The Board of Supervisors of Albemarle County, acting pursuant to a (then) newly amended statute that permitted the governing body to provide for an annual assessment, authorized a methodology that permitted an appraisal of the real estate in the county over a period of four years. (Va. Code § 58-769.2 has since been recodified and now appears in a slightly modified version as Va. Code § 58.1-3253.) The result was that, by the end of 1971, only 8,145 parcels of the more than 15,000 parcels had been reappraised. Rather than waiting until all of the property had been reappraised, the county assessed properties and applied the tax rate to those assessed values as they were reappraised so that some properties were assessed on appraisal values determined in 1969, some on appraisal values determined in 1970, and some on appraisal values determined in 1971. Although the appraisals, and the assessments on the plaintiffs' parcels, increased during that time, the balance of the parcels in the county were assessed during the same period of time using the same appraisals obtained in the 1967 general assessment. Clearly (and the Court concluded) the:

> piecemeal, segmental assessment methodology [the County] employed . . . [violated] the mandate of Virginia Constitution (1902) § 168 that "all taxes . . . shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax. . . ." Constitution of Virginia [1971], Article X, § 1.

*Id.* at 243. The perniciousness of that piecemeal methodology was reflected in the fact that some taxpayers paid approximately twice what they had previously paid, while others suffered no increase in tax at all. That was because the calculated taxes were the result of the tax rate multiplied by assessed values which were predicated on appraisals performed at different times, which yielded a constitutional deficiency in uniformity across the county.

The Court's decision in *Perkins* is both troublesome and instructive. The issue in *Perkins* did not relate to an improper valuation or appraisement of the subject properties; that is, the plaintiffs did not challenge the appraisals themselves. Rather, they argued (and the Court agreed) that the "reassessments, as distinguished from reappraisals, of the properties" of the plaintiffs were unconstitutional. Unfortunately, in light of the narrow issue presented and the specific question as framed by the Court itself, the Court's decision exceeded the plaintiffs' prayer for relief and declared not only that the reassessments were unconstitutional, as the plaintiffs had demanded, but also that the taxes levied on the basis of these reassessments

were unlawful. *Id.* at 244–45. This final observation was neither before the Court on the plaintiffs' motion, nor was it necessary for the Court to resolve the issue that was raised by the plaintiffs. Indeed, in his opening paragraph, Justice Poff stated that the plaintiffs asked the Court "to declare defendant's reassessments of plaintiffs' properties null and void." *Perkins*, 214 Va. at 241. In his closing paragraph, however, Justice Poff opined as to an issue considerably broader than that single issue: "[T]he reassessments . . . were unconstitutional. To the extent such unconstitutional reassessments exceed assessments effective January 1, 1967, taxes levied thereon were unlawful. Such taxes collected must be refunded. Such taxes yet uncollected must be abated." *Id.* at 244–45. It is, in the truest sense of the word, dictum. Dictum or not, however, the words of the Supreme Court are entitled to deference, and the Court's conclusion superficially supports Certain Citizens' argument; facially, it proposes that a tax based on an unlawful assessment is itself unlawful.

*Perkins* is troublesome because it appears to ignore, just as Certain Citizens have done in this case, the important distinction, carefully drawn by the Supreme Court in other decisions, *see Breckenbridge*, 146 Va. at 5; *McGinnis*, 146 Va. at 173 (1926), between assessments and levies. Indeed, the decision arguably conflates the two: the Court first declares that certain property reassessments were unconstitutional and, on that basis, determines that the taxes levied on the basis of those reassessments were unlawful. If the distinction between a levy and an assessment is relevant — and both logic and precedent argue that it is — the true precedential value of *Perkins* depends upon a close analysis of that decision to determine whether the Court's declaratory relief addressed a faulty levy or a faulty assessment.

In spite of its façade of support for Certain Citizens, *Perkins* does not vindicate their claims. It is important to note what the Court did *not* say: the Court did not declare that the order of levy was illegal. Indeed, the Court's declaratory judgment indicated that the order of levy was legal and was preserved. The Court merely held that a portion of the assessed taxes were unlawful, namely the amount that exceeded that which would have been assessed based on the last legitimate assessment, which was in 1967. This critical detail is evident in the final paragraph of the opinion: "*To the extent such unconstitutional reassessments exceed assessments effective January 1, 1967, taxes levied thereon were unlawful.*" *Id.* at 244–45 (emphasis added). Thus, the Court's ultimate declaration in *Perkins* was not that the order of taxation was unlawful; rather, the Court declared only that certain amounts assessed against certain taxpayers were unlawful. To find that the *order of taxation* was unlawful would have required the Court to declare *all* property taxes paid under the order to be unlawful, not merely certain amounts paid by certain individuals.

Moreover, the Court noted on rehearing that the "statutes make available to aggrieved taxpayers separate proceedings for refund and

abatement of taxes unlawfully imposed." *Perkins v. County of Albemarle,* 214 Va. 416, 419 (1973). Therefore, as I understand *Perkins* in relation to the distinction between a levy and an assessment, the Court's conclusion that the taxes were "unlawful" is not tantamount to a declaration that the entire order of levy was unlawful or defective. Rather, it was merely an imprecise way of declaring that the plaintiffs may be entitled to relief that is limited by the amounts of the unconstitutional reassessments in relation to the last legitimate assessment. Indeed, the Court certainly did not hold or imply that the property taxes themselves were unlawful. The limits of the Court's declaration in *Perkins* indicate that it reaches the lawfulness of the assessments but does not reach the lawfulness of the underlying order of taxation, in spite of the Court's loosely worded dictum to the contrary.

I hasten to add one other feature that distinguishes *Perkins*: the plaintiffs in *Perkins* sought only declaratory relief, *Perkins*, 214 Va. at 241, whereas Certain Citizens have asked this Court to reverse the Board's Order. The significance of this distinction is that, in order to find for Certain Citizens, this Court must invalidate an entire order of levy. In *Perkins*, the Court was not asked to provide such a sweeping remedy, and I venture to guess that the Court did not contemplate that its decision might in the future be the basis of such a remedy. Rather, its declaration that the taxes pertaining to those unconstitutional reassessments were "unlawful" was merely a way, albeit susceptible of ambiguity, of noting that those plaintiffs affected by the unconstitutional reassessments were possibly entitled to a refund via one of the several statutory remedies available to them.

## Conclusion

As I stated above, the true nature of Certain Citizens' claim is that the Reassessment is inaccurate or otherwise unconstitutional. They have alleged no facts, however, to support their legal conclusion that the Reassessment is illegal or to give the Board fair notice of the cause of action against it. Even with such factual support, however, Certain Citizens have improperly brought their challenge of the Reassessment as a petition under Va. Code § 58.1-3003, attacking the Order and praying that the Court reverse it. Va. Code § 58.1-3003 provides a means of relief from illegal taxes, and Certain Citizens have alleged no error or illegality in the Order. Therefore, the Court sustains the Board's Demurrer with prejudice.