MARIO G. RECANZONE AND MARION E. RECANZONE, HUSBAND AND WIFE, LAUF CORPORATION, A NEVADA CORPORATION, ERIC C. PALLUDIN AND GLENNA PALLUDIN, HUSBAND AND WIFE, APPEL- LANTS, *v.* NEVADA TAX COMMISSION, NEVADA STATE BOARD OF EQUALIZATION, CHURCHILL COUNTY BOARD OF EQUALIZATION, AND ROB- ERT O. BARKLEY, CHURCHILL COUNTY ASSESSOR, RESPONDENTS.

No. 8233

May 26, 1976                                            550 P.2d 401

*Diehl, Recanzone, Evans & Smart,* of Fallon, for Appellants.

*Robert List,* Attorney General, and *James D. Salo,* Deputy Attorney General, Carson City, for Respondents Nevada Tax Commission, Nevada State Board of Equalization.

*John R. McCormick,* District Attorney, Churchill County, for Respondents Churchill County Board of Equalization and Robert O. Barkley, Churchill County Assessor.

**OPINION**

By the Court, ZENOFF, J.:

In 1968, Robert O. Barkley became the county assessor of Churchill County, Nevada. Pursuant to the directives of NRS 361.260, he commenced to reappraise and reassess all real

property located in the county. Barkley planned to complete this task within a period of five years. It is conceded that he diligently utilized all resources at his disposal in pursuing his plan of reappraisal and reassessment and that concomitantly he attempted to obtain additional manpower and money to expedite completion of the task at the earliest time. Although unsuccessful in this latter endeavor, Barkley completely reappraised and reassessed all property within Churchill County within the designated five-year period.

Appellants, residents and taxpayers of Churchill County, object to the method of reappraisal and reassessment employed by Barkley. Once the property was reappraised and reassessed it was placed immediately on the tax roll. Appellants claim no reappraisals should have been reflected on the tax roll until all of the property in the county had been reappraised. Otherwise, it is urged, the uniformity of taxation requirements of the Nevada and United States Constitutions as well as certain specific provisions of the Nevada Revised Statutes are violated.

The issues presented on this appeal may be delineated as follows: (1) Whether NRS 361.260 requires a comprehensive reappraisal of all taxable property in a county before any reassessment based upon said reappraisal can be imposed? And (2) Whether the particular plan of reappraisal employed in this case violated the equal protection provisions of the Federal Constitution or Section 1 of Article X of the Nevada Constitution?

1. The reappraisal scheme employed by Barkley is commonly characterized as "cyclical" or continuous in nature. Under such a scheme some property owners will pay property tax assessments based upon more recent reappraisals than others. From the standpoint of taxing authorities, a cyclical plan of reappraisal is preferable to a comprehensive plan of reappraisal which requires a complete reappraisal of all property within a given area before any reappraisals can constitute a basis for a new assessment. A cyclical plan requires a smaller investment in money and manpower than would be required to implement a comprehensive plan which generated a comparable amount of tax revenue. This result follows from the fact that, under a cyclical plan, increases in appraised value are almost immediately reflected in increased tax revenue. Under a comprehensive plan there may be a substantial time lag between a reappraisal and a corresponding increase in tax revenue (assuming that the same amount of resources are available for the implementation of each plan).

Appellants argue that NRS 361.260, properly construed,

prohibits implementation of a cyclical plan of reappraisal. The statute reads as follows:

*"Method of assessing property for taxation; appraisals and reappraisals.*

"1.    Between July 1 and December 31 in each year, the county assessor, except when otherwise required by special enactment, shall ascertain by diligent inquiry and examination all real and personal property in his county subject to taxation, and also the names of all persons, corporations, associations, companies or firms owning the same. He shall then determine the full cash value of all such property and he shall then list and assess the same at 35 percent of its full cash value to the person, firm, corporation, association or company owning it.

"2.    In arriving at the value of all public utilities of an intra-county nature, the intangible or franchise element shall be considered as an addition to the physical value and a portion of the full cash value.

"3.    In addition to the inquiry and examination required in subsection 1, the county assessor shall appraise property using standards approved by the Nevada tax commission, and reappraise all property at least once every 5 years thereafter using the same standards. Such appraisals and reappraisals at 5-year intervals shall be accepted as the examination required under subsection 1, for the intervening 4 years."

The precise language of the statute neither specifically permits nor prohibits the application of a cyclical plan of reappraisal. "If the language [of a statute] is capable of two constructions, one of which is consistent and the other is inconsistent with the evident object of the legislature in passing the law, that construction must be adopted which harmonizes with the intention." State of Nevada v. Cal. M. Co., 13 Nev. 203, 217 (1878). See also, Thomas v. State, 88 Nev. 382, 498 P.2d 1314 (1972); Welfare Div. v. Washoe Co. Welfare Dep't, 88 Nev. 635, 503 P.2d 457 (1972); State Gen. Obligation Bond v. Koontz, 84 Nev. 130, 437 P.2d 72 (1968).

The purpose of NRS 361.260 was to insure that all property within a county be assessed on the basis of appraisals which are as current as practicable. Real property values tend to increase with the passage of time. NRS 361.260 effectively insures that maximum revenue is obtained through the property tax structure. Of the two constructions offered by the parties hereto, that which most closely harmonizes with the apparent legislative object is that offered by respondent. The plan which appellants favor would result in a substantial lapse between the time

the property is reappraised and the time it is placed on the tax roll at a value reflecting the reappraisals. Under such a plan all of the property in the county would have to be reappraised before any property could be reassessed on the basis of the reappraisal.

It is apparent that more revenue would be generated from the first plan than from the second with a much smaller investment in terms of money and manpower. Thus, it would appear that the legislature seeking maximum tax revenue would prefer a continuous reappraisal plan and since the statute is susceptible to such a construction it should be so construed.

2. Article X, Section 1 of the Nevada Constitution, provides:

"The legislature shall provide by law for a uniform and equal rate of assessment and taxation, and shall prescribe such regulations as shall secure a just valuation for taxation of all property. . . ."

Appellants concede that there is no practical distinction between Section 1 of Article X and the equal protection clause of the United States Constitution. "[W]hat violates the one will contravene the other." Hamilton v. Adkins, 35 So.2d 183, 189 (Ala. 1948), cert. denied, 335 U.S. 861 (1948).

Almost uniformly, the courts have upheld cyclical reappraisal programs against equal protection attacks. See, e.g., Apex Motor Fuel Co. v. Barrett, 169 N.E.2d 769 (Ill. 1960); Skinner v. New Mexico Tax Comm'n, 345 P.2d 750 (N.M. 1959); Carkonen v. Williams, 458 P.2d 280 (Wash. 1969); Perkins v. County of Albemarle, 200 S.E.2d 566 (Va. 1973). See also, Sunday Lake Iron Co. v. Township of Wakefield, 247 U.S. 350 (1918). Only where the implementation of a cyclical reappraisal plan results in intentional discrimination, arbitrary action, constructive fraud, or grossly and relatively unfair assessments are the constitutional provisions relating to equal protection and uniformity violated.

Here, the trial court concluded that Barkley's plan was systematic, was not arbitrary, and that it resulted in no intentional discrimination or fraud. The record supports this finding. While it is true that Barkley testified that he would reappraise only so much property each year as his budget and staff would permit, such circumstances alone are not sufficient to support a finding

of constitutional violation. See Skinner v. New Mexico Tax Comm'n, *supra;* Cardonen v. Williams, *supra.* Nor does the fact that appellants' property was reappraised twice between 1969 and 1974 suggest a constitutional violation. The record indicates that appellants constructed certain improvements on their properties and that under such circumstances reappraisal occurred as a matter of course.

Affirmed.

GUNDERSON, C. J., and BATJER, MOWBRAY, and THOMPSON, JJ., concur.