No. 13418

IN THE SUPREME COURT OF THE STATE OF MONTANA

1976

---

JOHN F. PATTERSON, JR., as
Trustee of the Estate of John F. Patterson, et al.,

Plaintiffs and Respondents,

-vs-

THE STATE OF MONTANA, DEPARTMENT OF REVENUE,
and WILLIAM A.GROFF, Acting Director Thereof, and
DOUGLAS W. CAMPBELL, COUNTY ASSESSOR FOR MISSOULA
COUNTY,

Defendants and Appellants.

---

Appeal from:  District Court of the Fourth Judicial District,
              Honorable Jack L. Green, Judge presiding.

Counsel of Record:

    For Appellants:

        Randall Swanberg argued, Great Falls, Montana
        R. Bruce McGinnis, Helena, Montana

    For Respondents:

        Turnage and McNeil, Polson, Montana
        Jean A. Turnage argued, Polson, Montana
        Boone, Karlberg and Haddon, Missoula, Montana
        Sam Haddon argued, Missoula, Montana

    For Amicus Curiae:

        Cure, Borer and Lynch, Great Falls, Montana
        Orin Cure argued, Great Falls, Montana
        Thomas Clary argued, Great Falls, Montana
        Robert P. Goff argued, Great Falls, Montana
        Richard McCann, Billings, Montana

---

Submitted:  September 8, 1976

Decided:  DEC 6 - 1976

Filed: DEC 6 - 1976

Thomas J. Kearney
                            Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

The Montana Department of Revenue and two tax officials appeal from a judgment of the district court, Missoula County, holding the current statewide property appraisal program unconstitutional and illegal and permanently enjoining its implementation and use in Missoula County.

The background of the present controversy will furnish an overview of the situation on appeal and place the issues in perspective. Prior to the effective date of the new Montana Constitution on July 1, 1973, the process of appraisal, assessment and taxation of real property in Montana was largely in the hands of county officials subject to supervision, appeal and equalization by the State Board of Equalization. Although property valuations were by law subject to a continuous process of keeping valuations current, there was a considerable variation in performance among the 56 counties in Montana in keeping appraisal valuations up-to-date. Some idea of this situation statewide can be gleaned from these cases: Yellowstone Pipeline Co. v. State Board of Equalization, 138 Mont. 603, 358 P.2d 55; State Board of Equalization v. Vanderwood, 146 Mont. 276, 405 P.2d 652.

When the 1972 Montana Constitution became effective, the State Department of Revenue assumed jurisdiction over the property taxation system in Montana pursuant to Art.VIII, Section 3, 1972 Montana Constitution and implementing legislation. Between July 1, 1973 and July 1, 1975 the Department of Revenue was engaged in information gathering, standardizing appraisal

procedures, hiring and training appraisal staffs in the various counties, and similar activities as well as reappraising property.

In early 1975 the Montana Legislature enacted a statute directing the Department of Revenue to administer and supervise a program for the revaluation of all taxable property in Montana at least every 5 years; to promulgate a comprehensive written plan of rotation fixing the order of revaluation in each county on the basis of the last revaluation of taxable property in each county prior to July 1, 1974 to adjust disparities between counties; and to provide that all property in each county be revalued at least every 5 years or that 20% thereof be revalued each year. Section 1, Ch. 294, Laws of 1975, codified as section 84-429.14, R.C.M. 1947. The legislation also provided that the same method of appraisal and assessment be used in each county so that at the end of each cyclical revaluation program comparable property with similar market values would have substantially equal taxable values. Section 2, Ch. 294, Laws of 1975, codified as section 84-429.15, R.C.M. 1947.

In April 1975, this Court held the Department of Revenue's implementation of a county-financed reappraisal of property in Lewis and Clark County by a private appraisal firm was unconstitutional in violation of equal protection, due process and uniformity requirements. Larson v. State Department of Revenue, 166 Mont. 449, 534 P.2d 854. The thrust of Larson was that the State Department of Revenue had no statewide plan of reappraisal and accordingly implementation of the county-financed plan resulted in an unconstitutional and disproportionate tax burden on Lewis and Clark County taxpayers as compared to taxpayers of other counties.

In early June 1975 the Department of Revenue distributed a document known as the "Montana Appraisal Plan" which is the focal point of this appeal. It purported to be a general and uniform statewide plan for a 5 year cyclical revaluation of all taxable property in Montana in compliance with Ch. 294, Laws of 1975 and in conformity with our decision in Larson. It was noticed for hearing, a hearing was held, and the plan as adopted as a rule of the Department of Revenue, purportedly pursuant to the provisions of the Montana Administrative Procedure Act, section 82-4201, et.seq., R.C.M. 1947.

The instant case was filed in the district court of Missoula County in April 1975 by a number of individual taxpayers and a taxpayers' association from Missoula County against the Department of Revenue, its director, and the Missoula County assessor. In general, this action challenges the constitutionality and legality of the Montana Appraisal Plan, its implementing legislation and the property appraisal program in Missoula County. It seeks both declaratory and injunctive relief. At the time the complaint was filed, the district court issued a temporary restraining order preventing the use of the reappraisals on the 1975 tax rolls. After hearing, an injunction pendente lite was issued to the same end resulting in the use of 1974 assessment roll valuations for 1975 taxes.

Approximately 20 similar actions were filed in the district courts of other Montana counties. Injunctive relief during the pendency of the actions was granted in some cases and denied in others preventing uniformity of application of the "Montana Appraisal Plan" and its revaluations on a statewide basis. Faced with this

- 4 -

the Governor of Montana directed the Department of Revenue to use the same appraisals in the tax year 1975 as were used in the 1974 tax year.

Trial of the instant case was commenced on January 26, 1976, in the district court of Missoula County before the Hon. Jack L. Green, district judge, sitting without a jury. On May 20, 1976, the district court entered findings of fact, conclusions of law, and judgment. The gist of the judgment was that the Montana Appraisal Plan was never legally adopted and is void; that the appraisal program carried on by the Department of Revenue in Missoula County violated the taxpayers' rights to uniformity of taxation and denied them due process and equal protection of the laws under the Montana and United States Constitutions; and permanently enjoined the use of the reappraisals and implementation of the reappraisal program in Missoula County.

The district courts of Flathead and Cascade Counties in similar suits have held the Montana Appraisal Plan and the revaluation program of the Department of Revenue thereunder constitutional.

The Department of Revenue has appealed from the judgment of the Missoula County district court in the instant case. Various taxpayers and taxpayer groups have appeared as amicus curiae by brief and oral argument in this appeal.

The underlying issues on appeal, as we understand them, can be summarized in this manner:

1) Is the Montana Appraisal Plan and its implementing legislation constitutional?

2) Was the Montana Appraisal Plan legally adopted?

3) Is the Department of Revenue proceeding legally and constitutionally under the Montana Appraisal Plan?

Directing our attention to the first issue, we note that the basic attack of respondent taxpayers on the constitutionality of the Montana Appraisal Plan and its implementing legislation is that it does not provide a general and uniform statewide plan of revaluation of all taxable property in the state, but on the contrary is simply 56 separate county plans, each of which is different from the others, resulting in an unreasonable, discriminatory and disproportionate tax burden upon the taxpayers of Missoula County and the state of Montana. The taxpayers also contend there is no provision for the appraisal of timberlands in the plan which are required to be appraised at full value. Additionally, they claim the property classifications in the Plan fail to treat all taxable properties of similar nature and use the same. As a result, the taxpayers assert that the plan and its implementing legislation do not conform to the legal requirement of uniformity of taxation and violate the due process and equal protection clauses of the Montana Constitution (Art. II, Sections 4 and 17, 1972 Montana Constitution) and the Fifth and Fourteenth Amendments to the United States Constitution.

Initially, we note the provisions of Art. VIII, Section 3, 1972 Montana Constitution:

> "The state shall appraise, assess, and equalize
> the valuation of all property which is to be taxed
> in the manner provided by law."

The manner of appraisal of property for tax purposes is set out in section 84-429.12, R.C.M. 1947:

> "It is hereby made the duty of the state department
> of revenue to implement the provisions of this act by
> providing"

> "* * *

- 6 -

"2. For a general and uniform method of appraising city and town lots.

"3. For a general and uniform method of appraising rural and urban improvements.

"4. For a general and uniform method of appraising timberlands."

Prior to 1975 Montana statutes required that all taxable property (other than agricultural lands) be assessed at full cash value. Section 84-401, R.C.M. 1947. The 1975 legislature amended this statute to provide for assessment of all property for tax purposes (other than agricultural lands) at 40% of full cash value.

The 1975 legislature also enacted section 84-429.14, R. C.M. 1947, providing:

> "The department of revenue shall administer and supervise a program for the revaluation of all taxable property within the state of Montana at least every five (5) years. A comprehensive written plan of rotation shall be promulgated by the department of revenue fixing the order of revaluation of property in each county on the basis of the last revaluation of taxable property in each county prior to July 1, 1974, in order to adjust the disparities therein between the counties. The plan of rotation so adopted shall provide that all property in each county shall be revalued at least every five (5) years or that no less than twenty per cent (20%) of the property in each county shall be revalued in each year. The department of revenue shall furnish a copy of the plan and all amendments thereto to each county assessor and the board of county commissioners in each county."

The 1975 legislature in the same bill enacted section 84-429.15, providing:

> "The same method of appraisal and assessment shall be used in each county of the state to the end that comparable property with similar true market values and subject to taxation in Montana shall have substantially equal taxable values at the end of each cyclical revaluation program hereinbefore provided."

According to the Department of Revenue, the Montana Appraisal Plan was promulgated pursuant to sections 84-429.14 and 84-429.15 and in compliance to our decision in <u>Larson.</u> In general the Plan classifies property for tax purposes in eleven categories and provides a schedule for reappraisal of such property in each county by year, percentage amount,/classifica-

and

tion in each year of the 5 year cycle so that at the end of the cycle all property in the entire state will have been reappraised. The Plan provides a separate schedule and rotation of reappraisal in each county with property most remotely appraised timewise deemed the most deviant from current value and scheduled for reappraisal first. The Plan provides that all property is to be appraised by a uniform method based on a designated appraisal manual.

We hold that the Montana Appraisal Plan and its imple-menting legislation is constitutional. Initially we recognize that violation of statutory uniformity requirements generally results in violation of constitutional equal protection and due process requirements. Larson v. State Department of Revenue, supra. However, we find no violation of statutory uniformity requirements in the plan. All like property is appraised by a uniform standard under the Plan according to uniform valuation procedures set forth in the same designated appraisal manual. The appraisal rotation is fixed by a uniform rule requiring the property that has gone longest since appraisal and is deemed to be most deviant from current values to be appraised first. All property in the state is required to be appraised by the end of the 5 year cycle.

Respondent taxpayers apparently contend that the Plan is not general and uniform because it consists of 56 separate county plans, each different from any other, rather than one homogeneous statewide plan. They point out in each county there is a different reappraisal schedule, different classifications of property in different amounts are reappraised in each year of the 5 year cycle in each county, and the sequence of reappraisal varies from county to county. However, they overlook the fact that each county presents a different situation with respect to recency of the last appraisal, the type of property that has gone the longest since appraisal, and the amount and classification of the property most deviant from current values. Where, as here, a uniform rule is provided for statewide application to determine the reappraisal rotation, the type and amount of property to be reappraised in each year in each county there is no violation of uniformity requirements.

It must be recognized that in any cyclical revaluation plan temporary disparities within the cycle between individual property valuations both within the county and between counties are inevitable. Nonetheless such cyclical plans have been uniformly upheld against uniformity and equal protection attacks under state and federal constitutional provisions in the absence of intentional, systematic, arbitrary or fraudulent discrimination. Recanzone v. Nevada Tax Commission (1976), ____Nev.____, 550 P.2d 401 and cases cited therein; Anno. 76 ALR2d 1077.

A major contention of the taxpayers focuses on the fact that those properties reappraised in the first year of the 5 year cycle and placed on the tax rolls then will pay a higher and disproportionate share of taxes in comparison to those properties reappraised in the last year of the cycle. This is undoubtedly

- 9 -

true in any cyclical reappraisal plan. However, as long as a taxpayer's property is not overvalued in the reappraisal process, he cannot secure a reduction in his own appraisal on the ground that another taxpayer's property is underappraised. The placing of revaluations on the tax rolls annually and sequentially as the reappraisals are completed is generally held not to offend constitutional equal protection and uniformity requirements in the absence of intentional and systematic discrimination, constructive fraud, or arbitrary action. Hillock v. Bade (1974), 22 Ariz.App. 46, 523 P.2d 97; Morrison v. Rutherford (1973), 83 Wash. App. 153, 516 P.2d 1036; Carkonen v. Williams (1969), 76 Wash.2d 617, 458 P.2d 280; Skinner v. New Mexico State Tax Commission (1959), 66 N.M. 221, 345 P.2d 750; Rogan v. County Commissioners of Calvert County (1950), 194 Md. 299, 71 A.2d 47.

Respondent taxpayers also assert that the Plan is defective because it contains no provision for the appraisal of timberlands. The short answer to this is that the Plan in fact contains provisions for reappraisal of "timber" and the Montana Administrative Code contains detailed appraisal procedures for timberlands according to use, accessibility, and other factors. MAC 42-2.22(1) - 52230 et seq. Further objection is made that timberlands are not assessed at full cash value, i.e. that timberlands are underassessed. Timberlands are assessed differently, it is true, with the land itself given a value as grazing land and the growing timber valued according to accessibility, logging costs, lumber prices and other factors. We find nothing constitutionally objectionable in this method of assessment. The evidence here falls far short of establishing an intentional and systematic discrimination, constructive fraud, or arbitrary action in the appraisal methods and procedures for valuing timberlands.

- 10 -

Finally, respondent taxpayers contend the property classifications in the Plan do not treat all taxable properties of similar nature and use the same. This is simply a part and parcel of their previous argument that the Plan is not a general and uniform statewide plan in which properties of a similar nature and use are not treated the same. The Plan contains various property classifications which are defined in the Plan and which are to be applied on a statewide basis. A uniform rule is applied statewide which satisfies uniformity and equal protection requirements and temporary inequalities within the cyclical period do not render the Plan unconstitutional for the reasons and under the authorities previously set forth.

The second issue on appeal is whether the Montana Appraisal Plan was legally adopted. The district court held it was not. We agree.

The district court entered two findings of fact on this issue:

> "17. On or about June 6, 1975, DOR [Department of Revenue] promulgated and distributed a document called the 'Montana Appraisal Plan'. The 'Montana Appraisal Plan' was promulgated under legislation enacted by the Montana Legislature in 1975 having an effective date of July 1, 1975. Notice of publication of a hearing on the plan to be held on July 16, 1975, was certified to the Secretary of State on June 13, 1975, and first published in the Montana Administrative Register on June 25, 1975. The public hearing was held on July 16, 1975. Oral and written protests to the form and substance of the proposed 'Montana Appraisal Plan' were submitted at the hearing. A specific request for a written statement 'of the principal reasons for and against' the plan's adoption 'incorporating therein its reasons for overruling the considerations urged against' adoption of the plan was made under R.C.M. 1947, Section 82-4204.

> "18. On August 14, 1975, DOR gave notice of its intention to adopt the plan as an administrative rule of the DOR in the form originally proposed. Notice of adoption of the plan was published in the Montana

Administrative Register on August 25, 1975. None of the persons appearing and protesting the adoption of the plan were given a written statement for the rejection by DOR of its reasons for overruling the considerations urged for rejection of the plan. The only effort made by the DOR for compliance with R.C.M. 1947, Section 82-4204, was a letter dated September 15, 1975, from W. A. Groff, Director of Revenue, to the Administrative Code Committee in Helena. This letter fails to comply with the requirements of R.C.M. 1947, Section 82-4204."

On the basis of the findings of fact, the district court entered its Conclusion of Law No. 3:

"3. The 'Montana Appraisal Plan' has not been adopted according to law and under the terms of the Administrative Procedure Act, R.C.M. 1947, Sections 82-4201, et seq., and is without legal force and effect as a valid rule of the Department of Revenue."

This same conclusion of law was entered as paragraph number 3 in the judgment of the district court.

The Montana Appraisal Plan was specifically promulgated pursuant to an act of the legislature. The statement of intent contained in the plan provides:

"The Montana Appraisal Plan is promulgated by the Department of Revenue in compliance with Chapter 294, Laws of 1975. 'AN ACT TO PROVIDE A CYCLICAL PROGRAM FOR THE REVALUATION OF TAXABLE PROPERTY'."

Once this legislation became effective the Department of Revenue was required to proceed under the Montana Administrative Procedure Act, section 82-4201, et seq. Under that act it was required to adopt the Montana Appraisal Plan as a rule of the Department of Revenue. Section 82-4202(2) of the Administrative Procedure Act defines the rules that must be adopted by state agencies in this language:

"(2)'Rule' means each agency regulation, standard or statement of general applicability that implements, interprets, or prescribes law or policy or describes the organization, procedures, or practice requirements of an agency. * * *." (Emphasis added).

Under the Administrative Procedure Act prior to the adoption of any such rule, the agency is required to give notice of its intended action, publish the notice in the Montana Administrative Register, give notice by mail to interested persons, hold a public hearing, consider fully written and oral submissions respecting such proposed rule, and upon adoption of the rule to issue "a concise statement of the principal reasons for or against its adoption, incorporating therein its reasons for overruling the considerations urged against its adoption" to any interested person upon request. Section 82-4204(1)(a) and (b). Thereafter the agency must refer the proposed rule to the administrative code committee of the legislature. Section 82-4204 (1)(c).

The purpose of the public hearing is to provide taxpayer imput to the proposed Plan; to require the Department of Revenue to fully consider the objections to the Plan, alternative proposals, and amendments; and to state to the interested taxpayers the Department's reasons for rejecting the considerations urged by the taxpayers.

The vice of the situation here is that these objectives became subordinated to bureaucratic justification of the Plan. Here, the taxpayers voiced many objections to the equities and fairness of the Plan as distinguished from its legality and constitutionality. For example, it was pointed out that by adopting a 3 year cycle rather than a 5 year cycle the inherent inequities of the Plan would be reduced; that continuation of the same order of reappraisal in each succeeding cycle perpetuates the inequities imposed upon those taxpayers whose property was first reappraised in the initial cycle; that the length of the

cycle precludes those taxpayers whose property was first re-appraised from the benefits of reduced millage that might later flow from a substantial increase in total property valuations in the county; that because of certain fixed and mandatory statewide mill levies, the burden on those taxpayers whose property was first reappraised would be increased; that the plan is retroactive in operation because it was implemented prior to its adoption; that the Plan is so ambiguous and in-complete in designated respects that a taxpayer of common understanding cannot tell whether the Plan is being followed or the law is being adhered to; that the higher reappraisals and increased valuations under the Plan should be delayed until the legislature can adjust the mill levies; and many others.

There is no evidence that these taxpayer objections, alteratives and considerations were fully considered by the Department of Revenue prior to adoption of the Plan as required by section 82-4204(1)(b). Indications are to the contrary. The evidence shows the Plan was put in operation before compliance with the Administrative Procedure Act. The evidence shows the director of the Department characterized the taxpayer objections (with the exception of placing the revaluations on the tax rolls annually as appraised) as "of a negative nature directed at property tax in general and not relevant to the plan." The evidence shows that the Plan as initially proposed by the agency was adopted in toto without amendment, alteration or modification.

We hold therefore that the Montana Appraisal Plan was never legally adopted as required by the Montana Administrative Procedure Act and is void and without legal force and effect as a rule of the Department of Revenue. Accordingly, revaluations

of property made thereunder cannot be placed on the tax rolls as a basis for taxation.

Our ruling on the second issue renders consideration of the third issue unnecessary.

The judgment of the district court of Missoula County is modified in conformity with this opinion and as so modified is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____
Justices.