**SPERRY CORPORATION, et al., Appellants,**

v.

**STATE TAX COMMISSION, Respondent.**

No. 66382.

Supreme Court of Missouri, En Banc.

Aug. 7, 1985.

Rehearing Denied Sept. 10, 1985.

---

**2.** Mo. Const. Art. VI, Sec. 19(a).

Stephen B. Strayer, Joseph J. Mulvihill, Kansas City, for appellants.

Michael F. Dandino, Legal Counsel, John B. Williams, County Counselor, Kansas City, for respondent.

Earle B. Leadlove, St. Louis, amicus curiae.

ALMON H. MAUS, Special Judge.

By appeal to the Board of Equalization and the State Tax Commission, 33 taxpayers sought reductions in the Jackson County assessed valuations of certain tangible personal property for the years 1979, 1980 and 1981. The reductions were sought upon the common basis that, when compared with corresponding assessments of real property in that county, such assessed valuations denied the taxpayers the equal protection of the laws contrary to the Fourteenth Amendment to the Constitution of the United States. The reductions in valuation sought totaled approximately $13,415,-367. The numerous appeals from the Board of Equalization were consolidated by the Commission. After a hearing upon a stipulation of facts, the Commission denied the appeals. Upon a petition for review, that decision was affirmed by the Circuit Court of Jackson County.

The taxpayers appeal to this Court. As a prelude, it is essential to observe the taxpayers do not appeal upon the sole basis that the valuations are arbitrary and excessive and not supported by competent and substantial evidence. See Hermel, Inc. v. State Tax Commission, 564 S.W.2d 888 (Mo. banc 1978). As demonstrated by this opinion, the taxpayers' challenge involves the construction of revenue laws of this state within the meaning of Art V, § 3, Mo. Const. This Court has jurisdiction. *State ex rel. Independence Sch. Dist. v. Jones,* 653 S.W.2d 178 (Mo. banc 1983).

Relevant to 1979, the stipulation of facts established the following. The assessed valuations of the appellants' tangible personal property in question were 33⅓ percent of true value. In Jackson County there had been no county-wide reassessment of real property values since 1940. In 1979, real property assessments "were maintained on the average at approximately 21.5 percent of true or fair market value." All real property added to the assessment rolls in that year "was assessed at 21.5 percent of true or fair market value to equalize said assessments with older real

property assessments." Further, such assessed value "is equalized at said county-wide average in order to comply with the decision of the Missouri Supreme Court in *Breckenridge Hotels Corporation v. Leachman,* 571 S.W.2d 251 (Mo. en banc 1978) and with the decision of the U.S. Supreme Court in *Sioux City Bridge Company v. Dakota County,* Nebraska, 260 U.S. 441 [43 S.Ct. 190, 67 L.Ed. 340] (1923)." The stipulation added, "[t]he equalization formula used by Respondent to reach the 21.5 percent on real property added to the assessment rolls in 1979 is determined by assessing the land value at 33⅓ percent of true value and assessing the improvement value at 54 percent of true value times 33⅓ percent." Such action was taken pending the completion of a county-wide reassessment in 1981.

The stipulation established substantially identical facts relevant to 1980. The same is true in respect to 1981 with two exceptions. For that year, "the average county-wide assessment ratio on real property in Jackson County is 15.2 percent of true value in money." The stipulation further recited that the assessments of real property would not be updated or raised until the completion of the county-wide reassessment in 1984.

The appellants' sole point on appeal is that the assessed valuations complained of violated "the appellants' rights to equal protection of the laws as guaranteed by the Fourteenth Amendment to the Constitution of the United States, in that the decision and order of the State Tax Commission assessed appellants' personal property at a higher rate of assessment than real property, contrary to the constitution and revenue statutes of the State of Missouri." The point is multifarious. As developed by argument and citation of authorities, the appellants in reality present three contentions. First, that the disparity between the assessed valuations of real property and the tangible personal property in question per se established a violation of the Fourteenth Amendment. Second, that such disparity is prohibited by the uniformity requirement of the Constitution of Missouri

and because of the violation of that requirement, the appellants have been denied the equal protection of the laws. Third, that the applicable statute of Missouri, § 137.115.1, directed that real property and tangible personal property be assessed at 33⅓ percent of its true value and such disparity establishes an unconstitutional, discriminatory administration of that statute.

Fundamental to analysis of the appellants' contentions is recognition of Art. X, § 4(a), of the Constitution of Missouri which provides: "All taxable property shall be classified for tax purposes as follows: class 1, real property; class 2, tangible personal property; class 3, intangible personal property." For the years in question, this constitutional provision clearly established three classes of property for the purpose of taxation. This classification was carried forward in the crucial constitutional provision concerning uniformity. Art. X, § 3, Mo. Const. Section 137.115.1, RSMo 1978, did provide that real and tangible personal property should be assessed at 33⅓ percent of its true value. However, that statute did not, and could not, abolish the classification established by constitutional provision.

When this separate classification of real property and tangible personal property is recognized, it is clear the appellants' first contention has no validity. Expressions of the limited nature of the restraints placed upon the taxing power of the states by the Fourteenth Amendment include the following.

> The provision in the Fourteenth Amendment, that no State shall deny to any person within its jurisdiction the equal protection of the laws, was not intended to prevent a State from adjusting its system of taxation in all proper and reasonable ways. It may, if it chooses, exempt certain classes of property from any taxation at all, such as churches, libraries and the property of charitable institutions. It may impose different specific taxes upon different trades and

professions, and may vary the rates of excise upon various products; it may tax real estate and personal property in a different manner; it may tax visible property only, and not tax securities for payment of money; it may allow deductions for indebtedness, or not allow them. All such regulations, and those of like character, so long as they proceed within reasonable limits and general usage, are within the discretion of the State legislature, or the people of the State in framing their Constitution. But clear and hostile discriminations against particular persons and classes, especially such as are of an unusual character, unknown to the practice of our governments, might be obnoxious to the constitutional prohibition. It would, however, be impracticable and unwise to attempt to lay down any general rule or definition on the subject that would include all cases. They must be decided as they arise. We think that we are safe in saying, that the Fourteenth Amendment was not intended to compel the State to adopt an iron rule of equal taxation.

*Bell's Gap R.R. Co. v. Pennsylvania,* 134 U.S. 232, 237, 10 S.Ct. 533, 535, 33 L.Ed. 892, 895 (1890), quoted in *Puget Sound Power & Light Co. v. King County,* 264 U.S. 22, 26–29, 44 S.Ct. 261, 263–264, 68 L.Ed. 541, 546 (1923).

The States have a very wide discretion in the laying of their taxes. When dealing with their proper domestic concerns, and not trenching upon the prerogatives of the National Government or violating the guaranties of the Federal Constitution, the States have the attribute of sovereign powers in devising their fiscal systems to ensure revenue and foster their local interests. Of course, the States, in the exercise of their taxing power, are subject to the requirements of the Equal Protection Clause of the Fourteenth Amendment. But that clause imposes no iron rule of equality, prohibiting the flexibility and variety that are appropriate to reasonable schemes of state taxation. The State may impose different specific taxes upon different trades

and professions and may vary the rate of excise upon various products. It is not required to resort to close distinctions or to maintain a precise, scientific uniformity with reference to composition, use or value.

*Allied Stores of Ohio v. Bowers,* 358 U.S. 522, 526–527, 79 S.Ct. 437, 440–441, 3 L.Ed.2d 480, 484–485 (1959). However, "[t]he State must proceed upon a rational basis and may not resort to a classification that is palpably arbitrary. The rule often has been stated ... that the classification 'must rest upon some ground of difference having a fair and substantial relation to the object of the legislation.'" *Allied Stores of Ohio v. Bowers,* supra, 358 U.S. at 527, 79 S.Ct. at 441, 3 L.Ed.2d at 485.

These principles were not impinged upon by *Sioux City Bridge Co. v. Dakota County, Neb.,* 260 U.S. 441, 43 S.Ct. 190, 67 L.Ed. 340, 28 A.L.R. 979 (1922). The pivotal issue in that case was not what constitutes unconstitutional discrimination. It was whether or not the taxpayer could cause the excessive valuation of its property to be lowered to that of comparable property or was relegated to attempting to cause property assessed below its true value to be raised to a valuation comparable with its property. Indeed, the Court remanded that case for a further hearing upon the issue of discrimination and invited "attention to the well-established rule in the decisions of this court, cited above, that mere errors of judgment do not support a claim of discrimination, but that there must be something more—something which in effect amounts to an intentional violation of the essential principle of practical uniformity." *Sioux City Bridge Co. v. Dakota County, Neb.,* supra, 260 U.S. at 447, 43 S.Ct. at 192, 67 L.Ed. at 343.

 It is well established that real property and tangible personal property may be placed in separate classes. "The state may tax real and personal property in a different manner." *Ohio Oil Co. v. Conway,* 281 U.S. 146, 159, 50 S.Ct. 310, 314, 74 L.Ed. 775, 782 (1930). Also see *Puget*

*Sound Power & Light Co. v. King County*, supra. For these reasons the disparity in ratio of assessed value to true value between the class comprised of real property and the class comprised of tangible personal property does not per se establish a violation of the Fourteenth Amendment.

■ The contention that the action of the taxing authorities complained of was a violation of the uniformity provision of the Missouri Constitution is self-defeating. "Taxes may be levied and collected for public purposes only, and shall be uniform *upon the same class or subclass of subjects* within the territorial limits of the authority levying the tax." Art. X, § 3, Mo. Const. (emphasis added). The disparity in valuations in question was not upon the same class of subjects, but between constitutionally established classes of property.

■ However, this constitutional classification does not, as the taxing authorities argue, limit the power of the legislature to require that the assessed valuation of the class comprised of tangible personal property be in the same ratio to the true value as that of real property. That power of the legislature was expressly recognized. "Property in classes 1 and 2 and subclasses of those classes, shall be assessed for tax purposes at its value or such percentage of its value *as may be fixed by law for each class* and for each subclass of class 2." Art. X, § 4(b), Mo. Const. (emphasis added).

Also contrary to the contentions of the taxing authorities, *State ex rel. Independence Sch. Dist. v. Jones*, supra, does not say the taxing authorities in that case were under no obligation to assess both real property and tangible personal property at 33⅓ percent of its true value. That case held that in determining "the equalized assessed value of the property" of a school district, the ratio of the assessed value of real property to its true value should not be automatically applied to tangible personal property.

Nor does that constitutional classification mean the appellants could not be denied the equal protection of the laws by discriminatory administration of § 137.115.1.

The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the state's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute *or by its improper execution* through duly constituted agents. And it must be regarded as settled that intentional systematic undervaluation by state officials of other taxable property in the same class contravenes the constitutional right of one taxed upon the full value of his property. *Sunday Lake Iron Co. v. Wakefield Tp.*, 247 U.S. 350, 352–353, 38 S.Ct. 495, 62 L.Ed. 1154, 1155–1156 (1918) (emphasis added). As stated, § 137.115.1 did require that both real property and tangible personal property be assessed at 33⅓ percent of its true value. Cf. *Louisville & Nashville R.R. Co. v. Public Service Commission*, 631 F.2d 426 (6th Cir.1980), cert. denied, 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 384 (1981); *Drey v. State Tax Commission*, 345 S.W.2d 228 (Mo.1961).

But, it is not every failure to follow such a mandate of a state constitution or statute that constitutes unconstitutional discriminatory administration of such a provision within the meaning of the Fourteenth Amendment. The basic standard by which such a failure is to be measured has been clearly expressed:

> It is also clear that mere errors of judgment by officials will not support a claim of discrimination. There must be something more,—something which in effect amounts to an intentional violation of the essential principle of practical uniformity. The good faith of such officers and the validity of their actions are presumed; when assailed, the burden of proof is upon the complaining party.

*Sunday Lake Iron Company v. Wakefield Tp.*, supra, 247 U.S. at 353, 38 S.Ct. at 495, 62 L.Ed. at 1156. That standard is to be applied with realization that "[w]hile practical uniformity is the constitutional goal, absolute uniformity is an unattainable

ideal." *Justus v. Board of Equalization of Kootenai County*, 101 Idaho 743, 620 P.2d 777, 781 (1980).

In applying these principles, the circumstances from which the disparity in assessed valuations developed must be considered. The circumstances to be considered in this case are those established by the stipulations, and facts of which this Court may take judicial notice. The latter includes the laws of this state, *Brown v. Morris*, 365 Mo. 946, 290 S.W.2d 160 (1956), including the proceedings by which they were enacted, *Newson v. City of Kansas City*, 606 S.W.2d 487 (Mo.App.1980), and matters of common knowledge, *State v. Summers*, 489 S.W.2d 225 (Mo.App.1972). From these sources it is reasonable to conclude the following is a summary of the relevant circumstances. Each year tangible personal property was listed anew upon the tax rolls. It was then valued and maintained at 33⅓ percent of true value. In Jackson County there had been no county-wide revaluation of real property since 1940. However, when real property was added to the tax rolls as a distinct tract, it was revalued at 33⅓ percent of true value. As a result, there a disparity in valuation of property within the class of real property. Such a disparity was common to many, if not all, counties in Missouri. *State ex rel. Tax Com'rs v. Schneider*, 609 S.W.2d 149 (Mo. banc 1980); *State ex rel. Cassilly v. Riney*, 576 S.W.2d 325 (Mo. banc 1979). This was the disparity condemned in *Breckenridge Hotels Corp. v. Leachman*, supra.

Following that decision, an instantaneous revaluation of the multitude of individual tracts of real property was impossible. An alternative was to equalize valuations within the class of real property. The parties stipulate this was done in Jackson County to comply with *Breckenridge Hotels Corp. v. Leachman*, supra.

Accepting this stipulation to be true, from a practical standpoint, *Breckenridge Hotels Corp. v. Leachman*, supra, upon constitutional grounds, had the effect of amending § 137.115.1. As so amended,

§ 137.115.1 prescribed that tangible personal property should be assessed at 33⅓ percent of true value. Also, as so amended, § 137.115.1 required an equalized valuation for real property in Jackson County. A difference between the assessed valuation ratio of the class of tangible personal property and the class of real property is not condemned by the Fourteenth Amendment. *Bell's Gap R.R. Co. v. Pennsylvania*, supra. It would be ironic to find that because the taxing authorities of Jackson County did what the parties perceive to have been constitutionally required, the actions of the taxing authorities resulted in the type of intentional, systematic discriminatory undervaluation condemned by the Fourteenth Amendment.

Also a circumstance of significance was the incredibly complex nature of a state-wide revaluation of property to establish compliance with the Fourteenth Amendment and the constitution and statutes of this state. This complexity was magnified by the almost limitless tracts of real property to be separately assessed. In addition, this herculean task had to be performed against a backdrop of amendments to the applicable provisions of the constitution and statutes of Missouri. Art. X, §§ 3, 4(b), Mo. Const.; §§ 137.010; 137.016; 137.-017; 137.021; 137.026; 137.073; 137.074; 137.080; 137.090; 137.112; 137.113; 137.-114; 137.115; 137.750, RSMo Supp.1984.

A decisive factor is that the disparity complained of did not go unheeded. It was stipulated that in Jackson County the equalized value of real property was maintained pending the completion of county-wide revaluation programs. There was a plan to eliminate within a reasonable time the undervaluations that formed the basis of the appellants' complaint. Compare *Ernest W. Hahn, Inc. v. County Assessor of Bernalillo County*, 92 N.M. 609, 592 P.2d 965 (1978). It must also be considered that the county-wide revaluation of real property was interrelated with the state-wide revaluation program.

The legislature placed the ultimate responsibility for maintaining constitution-

al revaluation upon the State Tax Commission. That commission has the duty to equalize inter-county valuations as well as intra-county valuations. *State ex rel. Cassilly v. Riney,* supra.

Isolated and uncoordinated judicial reductions in assessed valuations could produce a chain reaction of disparities. Such action could well result in chaos. For these reasons, when called upon to act precipitously, this Court has recognized the equal protection clause does not always require instantaneous correction of disparities in valuations. *State ex rel. Cassilly v. Riney,* supra. The necessity of time for legislative and adminsitrative correction of conditions producing such disparities is properly considered. A detailed recitation of the measures taken for such correction is not necessary for the purpose of this opinion. See, e.g., *State ex rel. Tax Com'rs v. Schneider,* supra. It is sufficient to note that a state-wide revaluation program is to be accomplished for 1985. § 137.750, RSMo Supp.1984.

The appellants' complaint is comparable to the complaint of taxpayers whose property is first selected for increased valuation in an area-wide revaluation program. In a case involving a selective revaluation, it has been observed: "Temporary inequalities which result from the practicalities of carrying out a county-wide systematic and definite property appraisal program are inevitable and constitutional." *Ernest W. Hahn, Inc. v. County Assessor of Bernalillo County,* supra, at 968. In considering an area-wide revaluation program, the Supreme Court of Rhode Island stated: "We wish to make clear that correcting past inequities without a general revaluation is not illegal per se or violative of constitutional uniformity or equal-protection provisions. But when the tax authorities act out of improper or discriminatory motives, the legitimacy of the revaluation process ends." *Picerne v. DiPrete,* 428 A.2d 1074, 1078 (R.I.1981). In a like vein, the Supreme Court of Idaho has observed: "Essentially, a revaluation plan is constitutionally lacking in uniformity only if it is arbitrary, capricious, fraudulent, or intentional-

ly discriminatory." *Justus v. Board of Equalization of Kootenai County,* supra, at 781. These principles have been held applicable where there is no formal plan of revaluation, *May Department Stores Co. v. State Tax Commission,* 308 S.W.2d 748 (Mo.1958), but not where a projected completion date is more than 50 years. *Ernest W. Hahn, Inc. v. County Assessor of Bernalillo County,* supra. The principles enunciated in these cases and the cases hereafter cited have long been recognized in Missouri. "Allowing to the Board a measure of discretion, it appears that it was taking a first step toward attaining uniformity in the assessments of the county, piecemeal though it may have been, and at a time when a complete revaluation was immediately impossible." *May Department Stores Co. v. State Tax Commission,* supra, at 760. Disparities in valuation in an area-wide revaluation program to be completed within a reasonable time have consistently been held not to violate the Fourteenth Amendment. *Louisville & Nashville R.R. Co. v. Public Service Commission,* supra; *Justus v. Board of Equalization of Kootenai County,* supra; *Patterson v. State Dept. of Revenue,* 171 Mont. 168, 557 P.2d 798 (1976); *Recanzone v. Nevada Tax Com'n,* 92 Nev. 302, 550 P.2d 401 (1976); *Sator v. State Dept. of Revenue,* 89 Wash.2d 338, 572 P.2d 1094 (banc 1977); *State ex rel. Fort Howard Paper v. State of Wis. Lake Board of Review,* 82 Wis.2d 491, 263 N.W.2d 178 (1978).

*Sunday Lake Iron Co. v. Wakefield Tp.,* supra, involved an alleged undervaluation of real property on a county-wide basis in 1911. As compared with the county taxing authorities in that case, the task of taxing authorities in Jackson County in 1979, 1980 and 1981 in reaching and maintaining consistent valuations was staggering, almost of an unmanageable dimension. For this reason, the principles enunciated in a quotation from that case seem dispositive of this case.

But we are unable to conclude that the evidence suffices clearly to establish that

the state board entertained or is chargeable with any purpose or design to discriminate. Its action is not incompatible with an honest effort in new and difficult circumstances to adopt valuations not relatively unjust or unequal. When plaintiff in error first challenged the values placed upon the property of others no adequate time remained for detailed consideration nor was there sufficient evidence before the board to justify immediate and general revaluations. The very next year a diligent and, so far as appears, successful effort was made to rectify any inequality.

*Sunday Lake Iron Company v. Wakefield Tp.*, supra, 247 U.S. at 353, 38 S.Ct. at 495–496, 62 L.Ed. at 1156.

■ The appellants make no complaint their tangible personal property was assessed in excess of 33⅓ percent of its true value. They were not singled out from others similarly situated. The record does not establish the taxing authorities of Jackson County acted other than in good faith. For the reasons stated, that record does not demonstrate such an intentional systematic undervaluation of real property so as to result in a denial of the equal protection of the laws to the appellants contrary to the Fourteenth Amendment. The judgment is affirmed.

HIGGINS, C.J., and BILLINGS, BLACKMAR, DONNELLY, WELLIVER and RENDLEN, JJ., concur.

ROBERTSON, J., not participating because not a member of the Court when cause was submitted.