102

JACK NASH et al., Respondents, v ASSESSOR OF THE TOWN OF SOUTHAMPTON et al., Appellants. (Action No. 1.)

LOUIS C. CONKLIN et al., Respondents, v TOWN OF SOUTHAMPTON et al., Appellants. (Action No. 2.)

LAWRENCE MARTIN et al., Respondents, v ASSESSOR OF THE TOWN OF SOUTHAMPTON et al., Appellants. (Action No. 3.)

Second Department, June 10, 1991

## APPEARANCES OF COUNSEL

*John C. Bivona* and *David J. Gilmartin* for appellants. (One brief filed.)

*Siegel Fenchel & Peddy, P. C.; Reilly, Like & Schneider,* and *Pelletreau & Pelletreau (William D. Siegel, Irving Like* and *Benjamin L. Herzweig* of counsel), for respondents. (One brief filed.)

## OPINION OF THE COURT

Per Curiam.

The plaintiffs in these actions seek a refund of real estate taxes attributable to increased assessments imposed on their properties as a result of a comprehensive reassessment program implemented by the defendant Town of Southampton. Their claims are based on the purported delay in the complete implementation of the program, a delay which resulted in the reassessment of some of the parcels in the town before others. The plaintiffs have all had their properties reassessed under the town's program. They assert that an invidious and unconstitutional discrimination, attributable to the delayed reassessment of other properties in the town, has thereby been

worked against them. Accordingly, they urge that any increase in their real estate taxes attributable to the town's reassessment program should be refunded.

The Supreme Court, *inter alia,* granted summary judgment in the plaintiffs' favor. Since we conclude that there are material and as yet unresolved questions of fact with respect to the constitutional issues raised in this case, we reverse.

## I

Gary M. Simonson, the Assessor of the Town of Southampton and one of the defendants herein, testified at an examination before trial that in 1983 the town began a program of tax reassessment. Under the program, all of the approximately 45,000 parcels in the town would be reassessed in one of four ways. Specifically, it was contemplated that a parcel would be reassessed (1) when it was sold, (2) when it was subdivided, (3) when it was improved by new construction, or (4) when it became subject to reassessment under the town's so-called "land equalization program".

Simonson stated that, when the reassessment program was begun in 1983, he wanted it to be completed by June 1, 1989. It was contemplated that by that time all the parcels in the town would be reassessed. Simonson acknowledged that during the course of the reassessment program there would be some disparity in the tax burden shared by similarly situated taxpayers.

At the time of his deposition in 1987, Simonson estimated that approximately 20,000 parcels in the town had been reassessed under the town's reassessment program. Documentary evidence contesting this figure was submitted to the Supreme Court.

## II

This court has held that: "As a general rule, all real property within a district shall be assessed at a uniform percentage of market value (RPTL 305 [2] * * *). This statutory requirement is in keeping with the State's constitutional mandate that assessments within the various assessing units be equalized for taxation purposes (NY Const, art XVI, § 2; *see also, Foss v City of Rochester* [65 NY2d 247]). The Court of Appeals in addressing a challenge of unequal tax treatment of similarly situated properties reasoned as follows: 'The integrity of any system of taxation, and particularly real property

taxation, rests upon the premise that similarly situated taxpayers pay the same share of the tax burden *(see, Johnson v Smith,* 297 NY 165, 170[)]' " *(Matter of Krugman v Board of Assessors,* 141 AD2d 175, 183).

However, a tax classification will only violate constitutional equal protection guarantees "if the distinction between the classes is 'palpably arbitrary' or amounts to 'invidious discrimination' *(see, Lehnhausen v Lake Shore Auto Parts Co.* [410 US 356, 360]; *Shapiro v City of New York* [32 NY2d 96, 103])" *(Foss v City of Rochester,* 65 NY2d 247, 257, *supra).* As the United States Supreme Court has stated: "The Equal Protection Clause does not mean that a State may not draw lines that treat one class of individuals or entities differently from the others. The test is whether the difference in treatment is an invidious discrimination. * * * Where taxation is concerned and no specific federal right, apart from equal protection, is imperiled, the States have large leeway in making classifications and drawing lines which in their judgment produce reasonable systems of taxation" *(Lehnhausen v Lake Shore Auto Parts Co.,* 410 US 356, 359, *supra).*

Whether the delay in the implementation of a comprehensive reassessment of all of the parcels in a taxing jurisdiction can result in an equal protection violation does not appear to have been addressed by the appellate courts of this State. The issue has, however, been discussed in several decisions from courts of other States.

For example, in *Justus v Board of Equalization* (101 Idaho 743, 620 P2d 777), the Supreme Court of Idaho addressed the constitutionality of a county's three-year reassessment plan. Under the plan, there was a progressive reassessment of all the parcels in the county. However, because of various policy considerations, all the parcels in the county were not reassessed in the first year of the plan's implementation. Thus, during that year, some property owners within the county had their property reassessed while others did not. This resulted in disparate tax treatment of similarly situated taxpayers.

Nevertheless, the court upheld the constitutionality of the plan. In so doing, the court made the following observation.

"While practical uniformity is the constitutional goal [for a revaluation plan], absolute uniformity is an unattainable ideal. * * * Essentially, a revaluation plan is constitutionally lacking in uniformity only if it is arbitrary, capricious, fraudulent, or intentionally discriminatory. * * *

"In determining whether a revaluation plan meets constitutional standards of equality and uniformity, all relevant circumstances should be taken into consideration. Several factors pertinent to the above determination are: the limitations of time and staff; the nature and extent of existing inequities in the tax rolls; the extent to which such existing inequities are rectified by the plan; the amount and duration of temporary disparities under the plan; available alternatives; and whether non-implementation of the plan would perpetuate existing inequities" *(Justus v Board of Equalization,* 101 Idaho 743, 747, 620 P2d 777, 781, *supra).*

Other courts have made similar observations. In *Ernest W. Hahn, Inc. v County Assessor for Bernalillo County* (92 NM 609, 592 P2d 965), the Supreme Court of New Mexico stated:

"A taxpayer must not be subjected to discrimination in the imposition of a property tax burden which results from *systematic, arbitrary, or intentional* revaluation of some property at a figure greatly in excess of the undervaluation of other like properties. * * *

"Temporary inequalities which result from the practicalities of carrying out a county-wide systematic and definite property appraisal program are [however] inevitable and constitutional. This rule is universally accepted. * * *

"However, singling out one or a few taxpayers for reappraisals for several years in succession while virtually all other owners of comparable properties do not undergo a single reappraisal in the same period is an inequality that is neither temporary nor constitutional" *(Ernest W. Hahn, Inc. v County Assessor for Bernalillo County,* 92 NM 609, 611-612, 592 P2d 965, 967-968, *supra* [emphasis supplied]; *see also, Picerne v DiPrete,* 428 A2d 1074 [RI]; *Nuttall v Leffingwell,* 193 Colo 137, 563 P2d 356).

Substantial compliance with equal protection guarantees has been held to be sufficient. For example, in *Probst v City of New Orleans* (337 So 2d 1081 [La]), the Supreme Court of Louisana held that the revaluation and reassessment of property in the central business district of New Orleans was not unconstitutional on the ground that it was accomplished without the immediate revaluation of properties throughout the city. In so doing, the court, relying on the following "well established" constitutional principles, stated: " 'Although states have wide discretion in the area of taxation, such discretion may not be exercised so as to arbitrarily deprive

taxpayers of constitutional rights. While the Fourteenth Amendment does not require exact uniformity and equality in matters of taxation, it does protect against intentional and arbitrary discrimination whether resulting from the express terms of a statute or its improper execution by those charged with its enforcement' " *(Probst v City of New Orleans,* 337 So 2d 1081, 1085, *supra,* quoting from *(Bussie v Long,* 286 So 2d 689 [La]).

The *Probst* court went on to hold that since there was no evidence that the assessors intended to discriminate against property owners in the central business district, an equal protection violation had not taken place. Indeed, the court found that the central business district was the "natural place to start" the citywide reappraisal that the assessors were contemplating *(Probst v City of New Orleans,* 337 So 2d 1081, 1084, *supra).* The court further held that the "selection of the [central business district] as the area for beginning a revaluation and equalization program is supported by strong reasons and cannot be characterized as arbitrary or unreasonably discriminatory" *(Probst v City of New Orleans,* 337 So 2d 1081, 1085, *supra).* This holding conforms to holdings of various other appellate courts which have generally upheld cyclical reappraisal plans unless a plan "results in intentional discrimination, arbitrary action, constructive fraud, or grossly and relatively unfair assessments" *(Recanzone v Nevada Tax Comm.,* 92 Nev 302, 306, 550 P2d 401, 404; *see, Alexander v Town of Barton,* 152 Vt 148, 565 A2d 1294; *Kline v McCloud,* 326 SE2d 715, 720-721 [W Va]; *Patterson v State of Montana, Dept. of Revenue,* 171 Mont 168, 557 P2d 798; *Hillock v Bade,* 22 Ariz App 46, 523 P2d 97, *approved* 111 Ariz 585, 535 P2d 1302; *see also,* Annotation, *Real Estate Tax Equalization,* 76 ALR2d 1077 [1961]).

### III

In the instant case, the Supreme Court did not address these factors when it granted the plaintiffs' motions for summary judgment. Rather, the court substantially based its determination on this court's decision in *Matter of Krugman v Board of Assessors* (141 AD2d 175, *supra).* The holding in *Krugman,* however, is not controlling with respect to the issues raised in the instant appeal. Specifically, *Krugman* involved a taxing jurisdiction that would *only* reassess property upon that property's sale. This had the effect of "permit-

ting property owners who have been long standing recipients of public amenities to bear the least amount of their cost" *(Matter of Krugman v Board of Assessors, supra,* at 183-184). This court perceived "no legitimate governmental purpose to be served by perpetuating this differential treatment" *(Matter of Krugman v Board of Assessors, supra,* at 184). Nor could we perceive any rational basis for such disparate taxation. Under such circumstances, this court held that the taxing jurisdiction's "approach lacks any rational basis in law and results in invidious discrimination between owners of similarly situated property. Thus, the respondents' method of reassessment violates the Equal Protection Clause of both the United States Constitution * * * and the New York State Constitution" *(Matter of Krugman v Board of Assessors, supra,* at 184; *see also, Allegheny Pittsburgh Coal v Webster County,* 488 US 336).

In contrast, in the case before us, the town's reassessment of property was not limited to situations where the property was sold. Rather, as previously noted, reassessments were performed in 1 of 4 situations. Indeed, it is uncontroverted that under the town's land equalization program, all of the parcels within the town would ultimately be reassessed. Under such circumstances, the central question on this appeal is whether the purported delay in the reassessment plan worked an equal protection violation. This question is substantially distinguishable from the issue faced by this court in *Krugman* and that case is therefore inapplicable to the instant appeal.

## IV

It is well settled that summary judgment is a drastic remedy that should be granted only if there are no material and triable questions of fact *(see, Sillman v Twentieth Century-Fox Film Corp.,* 3 NY2d 395, 404; *Hantz v Fishman,* 155 AD2d 415, 416). There are various material questions of fact that make the granting of summary judgment inappropriate in this case. A primary question is the nature and extent of the purported inequities. An additional question requiring a factual determination is how long such inequities will persist. Nor can it be determined whether any disparate tax treatment arose out of an intentional, invidious, or arbitrary discrimination (as was the case in *Krugman,* where there was a finding of an invidious discrimination by the taxing jurisdiction against new property owners) *(see, Morrison v Rutherford,*

83 Wash 2d 153, 516 P2d 1036). Indeed, it cannot be said, on the present record, that the Town acted in bad faith in this case or that the plaintiffs were "singled out for selective enforcement of tax laws that apply equally to all similarly situated taxpayers" *(Ernest W. Hahn, Inc. v County Assessor for Bernalillo County,* 92 NM 609, 612, 592 P2d 965, 968, *supra; see also, Sunday Lake Iron Co. v Wakefield,* 247 US 350). A record must be developed and factual findings made with respect to these material questions and, accordingly, the orders and judgments of the Supreme Court are reversed, and the motions for summary judgment are denied.

BRACKEN, J. P., KOOPER, HARWOOD and BALLETTA, JJ., concur.

Ordered the orders and judgments are reversed, on the law, with one bill of costs, and the plaintiffs' respective motions for summary judgment are denied.