JUSTICE LEAPHART,
dissenting.
¶54 I dissent from the Court’s conclusion that § 15-7-111, MCA, violates the Equal Protection Clause of the Montana Constitution as applied to Roosevelt. The statute is presumed to be constitutional. State v. Nye (1997), 283 Mont. 505, 510, 943 P.2d 96, 99. The party challenging a statute bears the burden of proving its unconstitutionality beyond a reasonable doubt, and if any doubt exists, it must be resolved in favor of the statute. Grooms v. Ponderosa Inn (1997), 283 Mont. 459, 467, 942 P.2d 699, 703.
¶55 The Court concludes that § 15-7-111(1), MCA (1997), is unconstitutional as applied to Roosevelt and others whose property values in 1997 decreased from their 1996 values. The Court holds that such property owners “are entitled to be assessed at the actual 1997 market value of their property for the purpose of calculating their 1997 property taxes.” This conclusion assumes that 100% of current market value is the sole standard by which Class Four property can be assessed. However, neither the Montana Constitution nor the United States Constitution prohibit a deviation from that standard. Agricultural and forest lands, for example, have traditionally been assessed on their productive values rather than their market values. See, § 15-8-lll(6)(c), (d), MCA. In Nordlinger v. Hahn (1992), 505 U.S. 1, 11-14, 112 S.Ct. 2326, 2332-34, 120 L.Ed.2d 1, 13-15, the United States Supreme Court held that California’s Proposition 13, which taxed property based upon acquisition value, did not violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution despite the fact that acquisition value may not even remotely represent current market value.
¶56 Prior to 1997,100% of market value was the statutory standard for assessing Class Four property in Montana. However, the 1997 Legislature amended the tax code to provide for a system which no longer relied on 100% of current market value for Class Four property. Rather, the new system assessed and equalized property based on a derivative of its 1996 market value. Under the new system, each property was assigned a 1997 reappraisal value. Each property was then assessed on its 1996 value plus or minus 2% of the difference between its 1997 reappraised value and its 1996 value. The above proce *257 dure is uniform and applies equally to all Class Four property owners. It is also consistent with the equalization requirements of Article VIII, Section 3 of the Montana Constitution, which provides: “The state shall appraise, assess, and equalize the valuation of all property which is to be taxed in the manner provided by law.” Art. VIII, Sec. 3, Mont. Const. (emphasis added). Accordingly, I disagree with the Court’s assumption that current (1997) market value is the standard by which we must determine whether there has been a violation of the right to equal protection.
¶57 The Equal Protection Clause of the Montana Constitution provides that similarly situated properties must be appraised and assessed in a uniform manner. Patterson v. State, Dep’t of Revenue (1976), 171 Mont. 168, 175, 557 P.2d 798, 802. In Patterson, we addressed a 5-year appraisal plan in which 20% of all property, in each county, was appraised annually. In appraising 1/5 of the property each year, all property in the state of Montana would have been valued by the end of the 5-year cycle. Patterson, 171 Mont. at 174-75, 557 P.2d at 802. The taxpayers challenged this method, contending that properties valued in the first year of the cycle would be valued at a different market value than property appraised and assessed in the fifth year of the cycle. They argued, therefore, that this discrepancy would cause some property owners to pay a disproportionate share of taxes. Patterson, 171 Mont. at 176, 557 P.2d at 802. In upholding the cyclical revaluation or reappraisal method, this Court acknowledged that “temporary disparities within the cycle between individual property valuations both within the county and between counties are inevitable.” Patterson, 171 Mont. at 176, 557 P.2d at 802. We thus concluded that the 5-year appraisal cycle satisfied the Montana statutory uniformity provisions and the equal protection provisions of both the state and federal constitutions, given that similar properties were assessed and appraised in a similar fashion statewide.
¶58 The system presently under consideration constitutes an improvement over the 5-year cycle involved in Patterson. In contrast to the situation in Patterson, where 1/5 of all property was appraised each year, under the present system, all property is appraised in the same base year. Under the phase-in provisions of § 15-7-111, MCA, all property was appraised and assessed under the same standard for tax year 1996. All taxpayers in Montana received exactly the same valuation treatment Roosevelt received. That is, the difference between the 1996 tax year value and the reappraised 1997 value of their *258 property was phased in at the rate of 2% per year. That phase-in was added to or subtracted from the property’s 1996 value. More particularly, all properties similar to Roosevelt’s (i.e., properties which declined in value in 1997) received similar treatment; such properties had their reduced 1997 value phased-in via a 2% reduction from the previous year’s 1996 value.
¶59 All Class Four property is taxed at its 1996 value plus or minus 2% of the difference between its 1997 value and its 1996 value. All taxpayers have been treated the same and the same standard is applied to all similarly situated property statewide. In my view, this methodology does not, on its face, or as applied to Roosevelt, violate the equal protection guarantee.
¶60 Roosevelt also argues that the phase-in provision violates Article VIII, Section 7 of the Montana Constitution, which guarantees a property owner the right to appeal appraisals and assessments, because a property owner cannot, under § 15-7-111(1), MCA, receive a reduction on appeal to the true market value of his or her property. Given that Roosevelt, in fact, exercised his administrative appeals and received a 2% downward adjustment to the 1997 value of his property, this contention is difficult to understand. First, he appears to contend that his right to an effective appeal has been diminished because he did not prevail on his current market value argument. However, this argument assumes that current market value is the sole standard by which to measure the constitutionality of a tax. As I have stated above, I disagree with the underlying assumption in this line of argument. Secondly, he seems to argue that unless an appeal achieves a desired result, the right of effective appeal has been denied. There is no merit to this contention. As this Court’s opinion herein illustrates, Roosevelt’s rights to appeal have been honored from the administrative level all the way through the Montana Supreme Court.
¶61 For the above reasons, I would reverse the decision of the District Court.
CHIEF JUSTICE TURNAGE joins in the foregoing dissent of JUSTICE LEAPHART.